# United States Court of Appeals

## For the First Circuit

No. 01-2227

DAVID BOLTON, JR.,

Plaintiff, Appellee,

v.

STEPHEN TAYLOR, Individually and as Police Officer
of the City of New Bedford, Massachusetts,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,

Campbell, Senior Circuit Judge,

and Lynch, Circuit Judge.

Joseph L. Tehan, Jr. with whom Jonathan M. Silverstein and
Kopelman and Paige, P.C. were on brief for appellant.
David J. Bolton, Jr. pro se.

May 4, 2004

**BOUDIN**, <u>Chief Judge</u>.  On October 25, 1999, at about 10 a.m., David Bolton--later the plaintiff in this civil rights case-- pulled up to a gas station at the corner of Sawyer and Purchase Streets in New Bedford, Massachusetts.  A woman named Sandra Swain got out of Bolton's car.  These events took place in sight of police officer Stephen Taylor--the prime defendant in this case-- who was rolling up to the intersection in his police car and said that he knew Swain to be a prostitute who plied her trade on the corner and that she was also a drug addict.

According to Taylor's later testimony, Swain gave Taylor a "mischievous smile"--"maybe 'you caught me' or something to that effect."  Then, according to Taylor, Bolton gave him a quick glance, looked away, appeared "nervous," and left the parking lot with squealing tires and at a "high rate of speed."  Taylor followed and eventually pulled Bolton over.  These supposed details were not contested by Bolton at trial, except for Taylor's claim of squealing tires.

After Bolton was stopped, an altercation followed between Bolton, Taylor and several policemen who appeared in another police car.  Bolton and Taylor gave different versions as to how it began, each blaming the other, but there is no doubt that Bolton was thrown down, struck and suffered severe injuries.  Taylor sought prosecution of Bolton on five state charges, and Bolton was

convicted by a jury on two of them: assault and battery on a police officer and disturbing the peace.

In due course Bolton brought the present action under section 1983 against Taylor, two other officers, the police chief and the City of New Bedford. 42 U.S.C. § 1983 (2000). Eventually the case went to trial on just two claims. One was a false arrest claim against Taylor and another officer, transmuted along the way into a claim that Taylor had engaged in an unlawful <u>Terry</u> stop. <u>Terry</u> v. <u>Ohio</u>, 392 U.S. 1 (1968). The other was a claim against the same two officers for use of excessive force.

The jury returned a verdict against Taylor on the unlawful stop claim, awarding Bolton $175,000. The jury found for the defendants in all other respects, specifically rejecting the charge of excessive force. The district court required a reduction of the award to $17,500 by remittitur, which Bolton accepted to avoid a new trial. Taylor now appeals, claiming <u>inter alia</u> that the evidence was insufficient to support liability. Only this first ground of the appeal need be addressed.

Claims of insufficient evidence must ordinarily be preserved by a timely motion at trial for judgment as a matter of law. Fed. R. Civ. P. 50; <u>Davignon</u> v. <u>Clemmey</u>, 322 F.3d 1, 13 (1st Cir. 2003). In one of Taylor's post-trial motions, he represents that he made a motion at trial both at the close of the plaintiff's case and at the close of all evidence. Although at trial his

counsel did not spell out the contents of the motions, it is reasonably clear that counsel and the district court judge understood the oral motions as directed to the sufficiency of the evidence.

This brings us to the merits. The background legal rules are straightforward. At the time of the stop, Taylor lacked "probable cause" to believe that Bolton had committed an offense, but under the Terry doctrine, Taylor could pull Bolton over for a comparatively brief "investigative stop" on less than probable cause. See Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir. 2004). What Terry requires to satisfy the Fourth Amendment's reasonable seizure standard is an "articulable suspicion"--meaning a rational reason (as opposed to a hunch) to suspect criminal activity. Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000).

Whether a reasonable suspicion exists is treated as an objective inquiry: the actual motive or thought process of the officer is not plumbed. Whren v. United States, 517 U.S. 806, 813 (1996). So the only pertinent "facts" are the information available to the officer. If this is disputed, the jury's findings control unless clearly erroneous, see Ornelas v. United States, 517 U.S. 690, 696-97 (1996); United States v. Tibolt, 72 F.3d 965, 969 (1st Cir. 1995), cert. denied, 518 U.S. 1020 (1996), but in this case what Taylor saw and knew is not contested, apart from the question whether Bolton's tires squealed.

-4-

What deference, then, is to be given to the jury's further judgment as to the ultimate question: whether on known or resolved facts a reasonable suspicion of the defendant was not warranted?  Strictly speaking, the application of an abstract standard to known facts is a legal issue even though it is sometimes called a mixed question or question of law application, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 721 (1999); but usually some measure of deference is given to the factfinder, because the jury or trial judge is closer to the situation and unique facts diminish precedential value.[1]

However, there are exceptions and the Supreme Court has provided that no deference should be given to the fact-finder as to probable cause or reasonable suspicion where the raw facts are undisputed or settled and the only issue is one of law application. see Ornelas, 517 U.S. at 696-97; United States v. Maguire, 359 F.3d 71, 76 (1st Cir. 2004).  Although the Ornelas case involved a judge as fact-finder, it would make no sense to defer on law application to the jury but not to the trial judge.  See Johnson v. Campbell,

---

[1]Coady Corp. v. Toyota Motor Distributors, Inc., 361 F.3d 50, 57 & n.4 (1st Cir. 2004).  Sometimes the standard of review is described as one of reasonableness, e.g., United States v. Padilla-Galarza, 351 F.3d 594, 597 n.3 (1st Cir. 2003), but in truth the degree of deference tends to vary with the circumstances, In re Extradition of Howard, 996 F.2d 1320, 1328 (1st Cir. 1993).

332 F.3d 199, 204-09 (3d Cir. 2003); Bell v. Irwin, 321 F.3d 637, 640 (7th Cir.), cert. denied, 124 S. Ct. 84 (2003).[2]

In this case, we come reluctantly to the view that a policeman in Taylor's position was entitled to have a reasonable suspicion that Bolton had engaged in criminal activity. It is doubtful whether Taylor was motivated by any such belief, and his conduct may well have been deplorable; we shall return to these issues in due course. But under Fourth Amendment precedents, the decisive question is whether an objective observer could have had a reasonable suspicion, and to this question our answer is yes.

At trial and in his appellate brief, Taylor said or implied that Bolton might reasonably have been suspected of four different crimes: buying drugs from or selling them to Swain; driving under the influence of drugs; speeding or reckless driving; or soliciting prostitution. Taylor never says that any one of these possibilities was in his mind at the time or that any or all of them motivated his decision. Typical of his testimony is the following passage:

> Again, it was the totality of the whole circumstance. Sandra Swain being in the vehicle, a high crime area, he's squealing the tires out of the parking lot, he's not looking

---

[2]Another circuit has said that in light of Ornelas, it is pointless to submit the reasonable suspicion or probable cause questions to the jury at all unless the facts are disputed. See Bell, 321 F.3d at 640. Because in this case there were at least some details actually or potentially disputed, we need not pursue this issue.

-6-

at me, seems kind of nervous, you know, doesn't want to make eye contact with me. As soon as he rips out of there, I don't know . . . what he's holding, if he wants to throw something out of the car. There's a whole myriad of things that could be happening.

The supposed drug related crimes can readily be disregarded. Taylor apparently knew Swain was a drug user but there is no evidence, and no basis for suspicion, that Swain was a supplier to anyone or that Bolton (in fact a lobsterman with his own boat) was supplying Swain with drugs. The notion that Bolton had drugs ("I don't know what he's holding") or was driving under their influence (elsewhere implied by Taylor) is equally without any basis even for suspicion.

The suggestion that Bolton was speeding or driving unsafely is also unsupported. Taylor testified that Bolton's tires squealed as he left the lot and that he was traveling fast, but Taylor never <u>states</u> that Bolton was exceeding the speed limit, and Taylor never charged Bolton with speeding. Moreover, Bolton denied that he was speeding, a fact we must assume that the jury decided in Bolton's favor. <u>Seahorse Marine Supplies, Inc.</u> v. <u>P.R. Sun Oil Co.</u>, 295 F.3d 68, 84 (1st Cir. 2002).

This leaves as the only remaining crime the possibility that Bolton had solicited Swain's services as a prostitute--a crime to be sure, <u>Commonwealth</u> v. <u>King</u>, 372 N.E.2d 196, 203 (Mass. 1977), although one often ignored. Here, the evidence available to Taylor was thin but not non-existent: Swain was known to be a prostitute;

Bolton was letting her out of his car at her known haunt; the demeanor of both Bolton and Swain (according to Taylor's un-rebutted testimony quoted above) was faintly suspicious; and Bolton left very quickly on seeing Taylor, even if not unlawfully speeding.

Is this enough to give an officer a reasonable suspicion that Bolton had solicited sexual favors from a prostitute? Two points work in Taylor's favor. One is that the required level of suspicion for a Terry stop and brief inquiry is fairly low. Wardlow, 528 U.S. at 123-25. The other factor is that the law imputes to a trained policeman a measure of expertise, Ornelas, 517 U.S. at 699-700, and an explainable suspicion can be based on an assemblage of clues viewed through the lens of the policeman's training and experience. United States v. Sokolow, 490 U.S. 1, 9-10 (1989).

Here, Bolton was seen parting from a known prostitute at her usual beat, and the natural inference was reinforced by the pair's alleged suspicious demeanor and Bolton's rapid departure. So, on de novo review, we think that Taylor could have had a reasonable suspicion--nothing more--that Bolton had been consorting with Swain and instituted a Terry stop to ask Bolton what had

occurred between him and Swain.  Case law has allowed <u>Terry</u> stops on no greater suspicion.[3]

Why then does this outcome leave a sour taste?  It is primarily because Taylor apparently did not halt Bolton because Taylor was interested in investigating whether Bolton had committed the crime of soliciting a prostitute.  Taylor himself testified that arresting customers of prostitutes "does not interest me," that "I have never arrested a prostitute in my nine years," and that "[w]e are too busy in our city to get involved with that type of police work. . . .  We don't have--we don't have the time.  That's why narcotics and vice handle that type of situation."

Worse still, at trial Bolton testified that he had merely offered Swain a ride because she said that she was sick.  Taylor's counsel in turn called Swain as a witness and she testified that she had consorted with Bolton on the morning in question and at other times.  In response, over objection from the defense, Bolton's counsel then read transcripts of an earlier interview given by Swain to the police.  After the close of plaintiff's evidence, Bolton's counsel was allowed, over objection, to play a tape of Swain's interview.

---

[3]<u>Compare</u> <u>United States</u> v. <u>Martin</u>, 289 F.3d 392, 399 (6th Cir. 2002) (prostitute flagging down motorist), <u>and</u> <u>State</u> v. <u>Lipscomb</u>, 779 A.2d 88, 94 (Conn. 2001) (same), <u>with</u> <u>United States</u> v. <u>Gray</u>, 213 F.3d 998, 1000-01 (8th Cir. 2000) (presence in area of prostitution), <u>and</u> <u>Rivera</u> v. <u>Murphy</u>, 979 F.2d 259, 262-64 (1st Cir. 1992) (presence in area where drug dealer arrested).

In the interview, Swain had told a police investigator looking into the Bolton-Taylor incident that Taylor and other officers made a regular habit of harassing Swain's clients. She intimated that the officers did so not to effect arrests but merely out of humor or malice. Bolton's counsel invoked this evidence in her closing. On appeal, Taylor says it was error to admit the tape, arguing inter alia that its impeachment value was outweighed by its prejudicial impact, see Fed. R. Evid. 403, and its offer in evidence was unfairly instigated by the trial judge after Bolton had rested.

Whether or not the tape was admissible to impeach Swain's courtroom testimony, it might well have persuaded the jury of Taylor's actual motive for stopping Bolton even though--being hearsay--it was not admissible for its truth.[4] After all, Taylor had testified that he was not interested in prostitution, and his other supposed suspicions were even less plausible. If the law held Taylor responsible for making a Terry stop subjectively motivated by a wrongful purpose, the verdict against Taylor might be defended.

---

[4]There is an exception to the hearsay bar, associated with United States v. De Sisto, 329 F.2d 929, 933-34 (2d Cir.), cert. denied, 377 U.S. 979 (1964), now codified in Fed. R. Evid. 801(d)(1)(A), but there is no indication that its requirements were met in this case.

Unfortunately for Bolton, Whren's "objective" standard in Fourth Amendment cases seemingly makes subjective motive irrelevant in all such cases, 517 U.S. at 813; not only can the police invoke a minor traffic violation for an arrest actually prompted by other law-enforcement aims (e.g., the driver is a known drug dealer whom the police wish to surveil) but it is even irrelevant--at least under the Fourth Amendment, equal protection claims may be a different matter, id.--whether the same traffic violation is normally invoked against other drivers, so long as it is technically a violation. See 1 La Fave, Search & Seizure § 1.4 (3d ed. 1996, Supp. 2004) (deploring Whren).

In Holland v. City of Portland, 102 F.3d 6, 9-11 (1st Cir. 1996), this court formally reserved the question whether any subjective motive for a stop or arrest could be so bad as to overcome Whren's bar. We expressed grave doubt that Whren admitted of exceptions, but noted that, in Holland itself, there was no compelling evidence of harassment, id. at 11; here, there was evidence of a sort, but it was not admissible for its truth so the situation is about the same. Nothing since Holland suggests any erosion of Whren.

What this means is that Bolton cannot collect the $17,500 judgment to which his larger award was reduced, and we need not reach Taylor's other claims of alleged error such as the admission of the tape. Taylor may well have lacked any proper intent, but a

-11-

reasonable police officer could have performed a lawful <u>Terry</u> stop based on what Taylor knew.  That said, we join in the view--obviously shared by the district judge and the jury--that Bolton was badly treated by the police.

The judgment in Bolton's favor is <u>vacated</u>.  The case is <u>remanded</u> for entry of judgment in Taylor's favor.  Each side shall bear its own costs on this appeal.

<u>It is so ordered</u>.