# United States Court of Appeals
## For the First Circuit

No. 07-1217

UNITED STATES OF AMERICA,

Appellee,

v.

QUOC NGUYEN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya, Circuit Judge,
and Schwarzer,[*] District Judge.

Christie M. Charles, with whom George F. Gormley, P.C. was on
brief, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Robert Clark Corrente, United States Attorney, and Sandra R.
Beckner, Assistant United States Attorney, were on brief, for
appellee.

September 19, 2008

[*]Of the Northern District of California, sitting by designation.

**SELYA**, **Circuit Judge**.  This appeal hinges on a disputed evidentiary ruling.  The tale is tawdry, but quickly told.

On December 7, 2005, a federal grand jury in the District of Rhode Island handed up a two-count indictment against four men, including defendant-appellant Quoc Nguyen, charging violations of 18 U.S.C. § 894.  Count 1 alleged that the foursome had conspired to collect a gambling debt from one Tommy Nguyen (no relation to the appellant) using extortionate means, while count 2 alleged that each of the four men had committed the substantive offense: beating Tommy Nguyen to facilitate the debt collection.

The appellant's case was severed.  His three codefendants were tried first; a jury convicted them on both counts in a joint trial.  We affirmed their convictions and sentences.  See United States v. Anh, 523 F.3d 43 (1st Cir. 2008).

The appellant was tried separately.  The government's evidence included testimony from Tommy Nguyen (whom we hereafter shall call "Tommy" for ease in exposition) and two eye-witnesses, a law enforcement officer's account of an alleged confession attributed to the appellant, and corroborative exhibits (e.g., photographs, cancelled checks, and telephone records).

This evidence in cumulation showed that Tommy co-managed a nail salon in West Warwick, Rhode Island.  In or around April of 2005, he placed wagers totaling $12,000 on several basketball

games.  The bets were made with a Georgia bookmaker through a middleman in Ohio.

There was evidence indicating that one of Tommy's friends was responsible, as between them, for nearly one-half of the aggregate amount wagered.  But there was no evidence that the bookmaker either had approved this arrangement or had dealt directly with the friend.

The total amount wagered was lost.  Hot on the heels of this debacle, Tommy received a telephone call from codefendant Van Anh.  The caller informed him that the time had come to pay the piper.  Minutes later, Anh appeared at the nail salon along with two other men.  They demanded the money.  Tommy sparred for time, and Anh agreed that he could pay the debt in installments.

About ten days later Anh, codefendant Khong Nguyen (the appellant's brother), and a third man appeared at the nail salon and received $2,000 from Tommy.  A week or ten days after that, Anh and Khong Nguyen collected another $2,000 on account.

The same pair journeyed to the nail salon on June 12, 2005, bent on collecting a third installment.  Tommy gave them a check for $2,000 with the payee line left blank.  Anh subsequently cashed that check.

On June 20, Tommy met Anh and Khong Nguyen by prearrangement at a Providence club.  He gave Anh an $800 check

-3-

with the payee line left blank.  That check was later cashed at a Georgia bank.

Tommy seemingly believed that these payments satisfied his share of the gambling debt.  Others saw the matter differently; Anh soon called Tommy and insisted upon payment of the $5,200 balance.  When Tommy demurred, Anh stated that he knew where Tommy worked and that Tommy could not "run."  Anh then announced that he would send someone to collect what was owed.

Around 8:00 p.m. on July 25, Tommy stepped out of the nail salon to smoke a cigarette.  Three men were lurking nearby: the appellant, his brother, and codefendant Thinh Cao.  The men made it plain that they had come to collect the balance of the indebtedness.  Tommy replied that he already had paid what he owed and retreated inside the nail salon.

Tommy left the shop about half an hour later.  The three collectors surrounded him and threatened that if he did not pay they would "take care" of him.  At this juncture, Tommy talked to Anh on a cell phone, but Anh remained adamant; he warned that Tommy had better square the account.  Tommy again refused, and a beating ensued.

The attack was quick but vicious.  After knocking Tommy to the ground, the men kicked and pummeled him. Witnesses attested that the appellant participated in administering the beating.

-4-

Tommy eventually broke free, but not before he had sustained severe and painful injuries.

Once Tommy had escaped, the assailants fled. They were subsequently apprehended, identified by the victim and the other eye-witnesses, and detained.

A law enforcement officer testified that, later the same night, the appellant waived his Miranda rights, see Miranda v. Arizona, 384 U.S. 436, 444 (1966), and acknowledged his involvement in the events of July 25. In his oral confession, the appellant related that he had gone with the other two men to the nail salon to collect a gambling debt. He admitted that he personally had asked Tommy for the money; that when Tommy refused to pay, he and his brother had pushed Tommy to the ground; and that they "may have slapped [Tommy] around."

The appellant testified in his own defense. He repudiated the alleged confession and, instead, told a somewhat different story. He claimed that he did not know either Anh or the victim prior to July 25; that he and his brother set out late that afternoon for a Connecticut casino; that Khong Nguyen and Tommy were acquaintances; that he and Khong stopped by the nail salon so that Khong could pay Tommy a social visit; and that, after their arrival, a fight broke out between the quondam friends.

The appellant denied any purposeful involvement in the altercation (although he admitted that he had pushed Tommy in an

-5-

effort to keep his balance after fisticuffs had begun).  He did not learn until later, he said, that the point of the detour was to collect a gambling debt.

The jurors largely credited the government's witnesses: they convicted the appellant on the substantive extortion count while acquitting him on the conspiracy count (there was no evidence of any involvement on his part at any time other than on July 25). The district court imposed a 46-month incarcerative sentence.  This timely appeal ensued.

This is a rifle-shot appeal.  The appellant assigns error to a single evidentiary ruling: the district court's decision to exclude his proposed use on cross-examination of a prior felony conviction attributable to the victim.  That assignment of error implicates Rule 609 of the Federal Rules of Evidence.  Accordingly, we start with the structure of that rule.

As an initial matter, Rule 609 provides that if certain conditions are met a trial court may admit evidence that a witness has been convicted of a felony — that is, a crime punishable by more than one year in prison — "[f]or the purpose of attacking the character for truthfulness" of that witness.[1]  Fed. R. Evid.

---

[1]Rule 609 contains additional subsections dealing with the use of misdemeanor convictions and other related subjects.  Those provisions are not relevant here, so we omit any further reference to them.

609(a)(1). Rule 609(b) supplies a key limitation on Rule 609(a). That limitation reads in pertinent part:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction . . . unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Fed. R. Evid. 609(b). In short, Rule 609(b) is a rule of exclusion that bars the admission of a stale felony conviction for impeachment purposes in the absence of a particularized showing that its probative value substantially outweighs its potential for unfair prejudice. See, e.g., United States v. Meserve, 271 F.3d 314, 322 (1st Cir. 2001); United States v. Orlando-Figueroa, 229 F.3d 33, 46 (1st Cir. 2000). Given the tenor of Rule 609(b), common sense suggests that felony convictions more than ten years old should be admitted only sparingly and in especially compelling circumstances. See 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 609.06[1] (2d ed. 2007).

Against this backdrop, we turn to the application of Rule 609 in this instance. Tommy had a prior state-court conviction dating back to May 23, 1996.[2] He received a non-jail sentence.

---

[2]The statute of conviction provides:

> If any person shall enter any automobile or other motor vehicle with the intent to commit a theft or a felony, he shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for

-7-

The appellant's trial commenced on June 14, 2006. Pointing to the lapse of more than ten years between the date of the conviction and the commencement of the trial, the government moved in limine to foreclose any reference to Tommy's prior conviction. Although the government conceded that the prior conviction was for a felony, it argued that the passage of time rendered the conviction subject to the stringencies of Rule 609(b).

The appellant countered by moving in limine to bar the government from using his own prior felony convictions in cross-examination.[3] He simultaneously opposed the government's motion in limine, arguing among other things that the court should treat the various convictions as a "package" and allow either all or none to be introduced.

The district court held a hearing to consider the cross-motions in limine. During that session, the appellant — apart from his suggestion of a "package deal" anent all the prior convictions — did not identify any specific facts or circumstances showing that the probative value of Tommy's earlier conviction overbalanced its

---

not less than one year nor more than five years, or, in the discretion of the trial judge, as for a misdemeanor.

Ga. Code Ann. § 16-8-18.

[3]The appellant had two prior felony convictions: a February 24, 2004 state-court conviction for possession of burglary tools and a July 1, 1996 federal conviction for conspiring to distribute cocaine base and possession of cocaine base with intent to distribute.

-8-

unfairly prejudicial effect. At the end of the hearing, the court noted the absence of any such showing and excluded evidence of Tommy's conviction on that basis. The court simultaneously denied the appellant's motion. In so doing, it observed that the appellant's prior convictions both fell within the ten-year window framed by Rule 609(b).

At trial, the appellant was not permitted to cross-examine Tommy about his earlier conviction. In the defense case, the appellant's counsel attempted to blunt the shock value of the appellant's prior convictions by eliciting their existence on direct examination. Thereafter, the government briefly cross-examined the appellant about them.

In this venue, the appellant does not directly challenge the denial of his motion in limine but, rather, restricts his claim of error to the granting of the government's motion in limine.[4] We review rulings admitting or excluding evidence for abuse of discretion. See, e.g., United States v. Gobbi, 471 F.3d 302, 311 (1st Cir. 2006); Orlando-Figueroa, 229 F.3d at 46. In a situation such as this, that standard applies to rulings granting or denying motions in limine. See, e.g., United States v. Lachman, 48 F.3d 586, 590 (1st Cir. 1995). We discern no such shortcoming here.

---

[4]The government contends that this claim of error was not properly preserved below and, thus, has been either waived or forfeited. Because we find the challenged ruling to be well within the encincture of the trial court's discretion, see text infra, we need not address this contention.

At the risk of belaboring the obvious, we repeat that Tommy's conviction took place on May 23, 1996. It did not entail a period of confinement.[5] The appellant's trial commenced on June 14, 2006. Thus, the conviction was stale (i.e., over ten years old) and the generic proscriptions of Rule 609(b) were triggered. This, in itself, is entitled to some weight.

Here, moreover, the criminal offense underlying the conviction — auto entry — is a property crime. As such, it does not generate much traction along the road toward probative value in connection with the question of its perpetrator's veracity. See, e.g., United States v. Field, 625 F.2d 862, 872 (9th Cir. 1980) (explaining that property crimes suggest lack of veracity less clearly than, say, those listed in Federal Rule of Evidence 609(a)(2)). Indeed, even when the underlying offense is one directly relevant to credibility (say, a crime rooted in deceit or fraud), appellate courts — including this court — have upheld orders excluding stale convictions. See, e.g., United States v. Gray, 410 F.3d 338, 346 (7th Cir. 2005); Orlando-Figueroa, 229 F.3d at 46.

And, finally, this is not a "he said, he said" case in which the verdict depended upon the witness's unsupported

---

[5]The presence or absence of a period of confinement is important because Rule 609(b) explicitly provides that the ten-year window opens either on "the date of the conviction or [the date] of the release of the witness from the confinement imposed for that conviction, whichever is the later date." Fed. R. Evid. 609(b).

-10-

testimony. While Tommy's version of the events of July 25 was central to the prosecution's case, that version was substantiated by the independent testimony of two eye-witnesses, the appellant's confession, and photographs of the injuries that Tommy sustained. This scenario distinguishes the case at hand from the cases relied on by the appellant, which typically involve one-on-one credibility contests. See, e.g., United States v. Montgomery, 390 F.3d 1013, 1014-15 (7th Cir. 2004) (involving a contention that a single officer had falsified a charge and confession); United States v. Spero, 625 F.2d 779, 780-81 (8th Cir. 1980) (involving a situation in which the government's case hinged on cooperating witness's veracity).

In an effort to deflect the force of this reasoning, the appellant suggests that the district court should have allowed him to use Tommy's prior conviction as part of a devil's bargain to counterbalance the admission for impeachment purposes of the appellant's own prior convictions. Treating the auto entry conviction differently, the appellant says, let Tommy appear "pristine" while he (the appellant) appeared to be a low-life. This argument is flawed in several respects.

First, the argument rests on a logical fallacy. The appellant's prior convictions were recent and, as such, not within the generic proscriptions of Rule 609(b). The fact that the appellant was impeached by reference to those convictions did not

make Tommy's auto entry conviction any more probative of Tommy's character for truthfulness.

Second — and more saliently — the Evidence Rules deliberately treat recent felony convictions and stale felony convictions differently. The former are presumed to be admissible for impeachment purposes as long as "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1); see Fed. R. Evid. 403. The latter, however, must scale an appreciably higher hurdle: a felony conviction more than ten years old is generally excluded "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). The qualitative requirement for "specific facts and circumstances" and the quantitative requirement that probative value be shown "substantially" to outweigh prejudicial effect combine to make the barrier to admissibility of stale convictions under Rule 609(b) much higher than the barrier for the admissibility of recent convictions under Rule 609(a). Consequently, attempting to contrast the admission of stale felony convictions with the admission of recent felony convictions is like comparing plums to pomegranates.

The appellant has one final arrow in his quiver. Emphasizing the "interests of justice" language contained in Rule 609(b), he argues that the exclusion of Tommy's conviction is a fluke. After all, the government was permitted to use his prior drug-trafficking conviction, which occurred only six or seven weeks later than Tommy's auto entry conviction. He adds, moreover, that had his trial started a few months earlier — as did the trial of his codefendants — the ten-year window would have remained open. These arguments are unavailing.

Insofar as the appellant's argument is based on the closeness in dates of the drug-trafficking and auto entry convictions, it is misleading. The appellant's drug-trafficking conviction resulted in a four-year prison sentence and, thus, the ten-year window for that conviction did not open until sometime in the year 2000. See supra note 5. Consequently, that conviction fell comfortably within the ten-year period. See Fed. R. Evid. 609(b). On the other hand, the appellant's auto entry conviction resulted in a non-jail sentence. Thus, that conviction fell outside the ten-year period.

The appellant's plaint as to the timing of the trial is no more convincing. There is no suggestion here that the government manipulated either the calendar or the scheduling process in order to postpone the trial and allow the clock to run on the auto entry conviction.

At any rate, Rule 609(b) draws a bright line at ten years — and whenever the law draws a line, some events will fall on the "other" side. If the line were to be redrawn to account for the vagaries of this case — say, by setting it at eleven years rather than ten — we do not doubt that it would then chafe others. Short of abandoning bright-line rules entirely and insisting upon individualized consideration of the equities in each and every case, unaided by rules, there is no satisfactory answer. In terms of the efficient administration of justice and the encouragement of predictability of results, that solution would create an arguably greater problem.

In the last analysis, the standard of review caps our discussion. We have described the test for abuse of discretion in the following terms: "In making discretionary judgments, a district court abuses its discretion when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992). Here, the district court made a straightforward application of Rule 609. For aught that appears, it considered all the pertinent factors, did not seize on any improper factors, and reached a plausible conclusion as to the balance of probative worth and unfairly prejudicial effect. That

-14-

conclusion merits our approbation.  See United States v. Brito, 427 F.3d 53, 64 (1st Cir. 2005) ("Where the circumstances can fairly support a decision either to admit or to exclude particular evidence, it is not the proper province of an appellate court to second-guess the trial court's on-the-spot judgment."); Orlando-Figueroa, 229 F.3d at 46 (similar).  This was a quintessential judgment call, well within the trial court's discretion.

We need go no further.  For the reasons elucidated above, we uphold the challenged ruling.

**Affirmed**.