# United States Court of Appeals

## For the First Circuit

No. 08-1582

RALPH HOLDER,

Plaintiff, Appellant,

v.

TOWN OF SANDOWN, J. SCOTT CURRIER,
JASON R. MORROW, and DEREK FEATHER,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella, and Ripple,[*] Circuit Judges.

Sven D. Wiberg and Wiberg Law Office, PLLC on brief for
appellant.
Brian J.S. Cullen and CullenCollimore, PLLC on brief for
appellees.

October 29, 2009

[*] Of the Seventh Circuit, sitting by designation.

**RIPPLE**, **Circuit Judge**.   After he was arrested for the simple assault of his estranged wife, Ralph Holder brought this § 1983 action against the Town of Sandown, one Sandown police officer and the Sandown Chief of Police.   In his complaint, Mr. Holder alleged, in addition to other claims not relevant to this appeal, that the officer had lacked probable cause to effect the arrest and therefore had violated his rights under the Fourth Amendment to the Constitution of the United States, as made applicable to the states through the Fourteenth Amendment.   In due course, the defendants moved for summary judgment and, after a hearing, the district court granted the motion.   Mr. Holder appeals, contending that the district court erred in concluding that the officer had probable cause for the arrest.   For the reasons set forth in this opinion, we affirm the judgment of the district court.

## I.   BACKGROUND

### A.

Because this case is before us on an appeal from the grant of summary judgment, we must take the facts in the light most favorable to the non-moving party, Mr. Holder, and must draw all reasonable inferences in his favor.   Crawford v. Metro. Gov't of Nashville & Davidson County, Tenn., ___ U.S.___, 129 S. Ct. 846, 849 n.1 (2009); Taylor v. American Chemistry Council, 576 F.3d 16, 21 (1st Cir. 2009).

On October 4, 2003, Ralph Holder attended his son's soccer game.  His estranged wife, Maria, also was in attendance.  When it began to rain, Mr. Holder approached his wife and asked her if she had a long-sleeved shirt for their son.  When told that she did not, he asked if she could make sure that she had one next time.  At this point, Ms. Holder yelled at Mr. Holder that he needed to "keep [his] black mouth shut," R.10, Att. 5 at 1, and unexpectedly bumped him.  Mr. Holder "instinctively" pushed her away.  Id.  Ms. Holder challenged him to a fight and said that he needed "to keep [his] hands off [her]" and called him a "black bastard."  R.20 ¶ 9; R.10, Att. 5 at 2.  She then called the police.

Officer Jason Morrow was the first to arrive on the scene, and he spoke with Ms. Holder.  She identified Mr. Holder and told the officer that he pushed her.  Officer Morrow then went over and talked to Mr. Holder.  While this discussion was taking place, Officer Derek Feather arrived.

Mr. Holder told Officer Morrow that Ms. Holder had initiated a verbal confrontation that had escalated to the point where she made contact with him before he pushed her back.[1]  He

---

[1]  Mr. Holder's statement and affidavit do not establish with perfect clarity that he admitted to Officer Morrow that he had pushed Ms. Holder, and the record does not contain an affidavit from Officer Morrow.  However, at the summary judgment hearing, Mr. Holder's counsel conceded that Mr. Holder had told Officer Morrow that he pushed Ms. Holder after she pushed him.

also informed the officers that his estranged wife's true objective was to obtain a restraining order to keep him from having contact with his son. Mr. Holder also told them that he and his estranged wife were involved in a bitter and protracted divorce and child custody battle, and he urged the officers to speak with nearby witnesses.

Mr. Holder was arrested and charged with simple assault.[2] The determination of probable cause was made by Officer Morrow; Officer Feather merely assisted with the arrest. That assistance included providing his handcuffs for use in the arrest.

After the arrest, Officer Feather spoke with Ms. Holder and three witnesses. He received the impression that the witnesses did not want to get involved, but one of them did say that Ms. Holder had been verbally aggressive to Mr. Holder and, in the view

---

[2] New Hampshire defines simple assault as follows:

**631:2-a Simple Assault.**

I. A person is guilty of simple assault if he:

(a) Purposely or knowingly causes bodily injury or unprivileged physical contact to another; or

(b) Recklessly causes bodily injury to another; or

(c) Negligently causes bodily injury to another by means of a deadly weapon.

II. Simple assault is a misdemeanor unless committed in a fight entered into by mutual consent, in which case it is a violation.

See also In re Nathan L., 776 A.2d 1277, 1282 (N.H. 2001).

- 4 -

of the witness, had precipitated the dispute.  The other two witnesses seemed to agree.  However, the witness who spoke with Officer Feather based his opinion only on what he had heard; he had not seen anything.

The case against Mr. Holder eventually was dismissed.

**B.**

In his complaint, Mr. Holder alleged, in addition to several supplemental state law claims, that the officers had lacked probable cause to effect the arrest, that the officers had discriminated against him on the basis of race and gender and that the officers had violated his due process rights by not interviewing witnesses and by not allowing him to conduct his own investigation.[3]  The complaint named as defendants the Town of Sandown, Sandown's then-Chief of Police, J. Scott Currier, Officer Morrow and Officer Feather.  By the time Mr. Holder brought this action, however, Officer Morrow had left the Sandown Police Department; he never was served and therefore never became a defendant in this action.

The district court granted summary judgment for the defendants on the Fourth Amendment claim.  The district court held

---

[3]    Mr. Holder's complaint made reference to the Sixth Amendment right to compulsory process and notice about the nature and cause of the accusation against him, R.1 at 18, but, when asked by the district court to clarify the bases of his federal claims, Mr. Holder's counsel made no reference to the Sixth Amendment. R.29 at 2-5.  In any case, such a claim is not before us in this appeal.

that, as a matter of law, Mr. Holder's constitutional right to be free from an unreasonable seizure had not been violated. With respect to Officer Feather, moreover, the court determined that, because he had played no role in effecting the arrest, there was no basis for any liability. With respect to the Town, the court determined that there was no evidence of a policy, custom or inadequate hiring and training practices that could constitute the basis of liability. Similarly, with respect to the Chief of Police, the court held there was no evidence that he had encouraged, condoned or acquiesced in any illegal arrest. Failure to take action against the officers after the fact was not sufficient to expose him to liability.

The court also granted summary judgment on the remaining federal claims and dismissed the state claims without prejudice. Mr. Holder now appeals the district court's ruling with respect to whether there was probable cause to effect his arrest.

## II. DISCUSSION

### A.

An arrest is lawful if the officer has "probable cause." Tennessee v. Garner, 471 U.S. 1, 7 (1985). A police officer has probable cause when, at the time of the arrest, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has

committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); see also Beck v. Ohio, 379 U.S. 89, 91 (1964); Acosta v. Ames Dep't Stores, 386 F.3d 5, 9 (1st Cir. 2004); Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992); United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987). In determining whether the officer had probable cause, we must view the circumstances from the perspective of a reasonable person in the position of the officer. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 255 (1st Cir. 1996) (citing Illinois v. Gates, 462 U.S. 213, 231 (1983)). Probable cause requires only a probability that the defendant committed the crime. See Hill v. California, 401 U.S. 797, 804 (1971) ("But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time."); see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) ("Probable cause [to arrest] exists if there is a fair probability that the person committed the crime at issue." (internal quotation marks and citation omitted)). "The test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable." Acosta, 386 F.3d at 11 (internal quotation marks and citation omitted).

The question of probable cause, like the question of reasonable suspicion, is an objective inquiry. See Bolton v. Taylor, 367 F.3d 5, 7 (1st Cir. 2004). The "actual motive or thought process of the officer is not plumbed." Id. (citing Whren v. United States, 517 U.S. 806, 813 (1996)). The only relevant facts are those known to the officer. When these facts are in reasonable dispute, the fact-finder must resolve the dispute. Bolton, 367 F.3d at 7. However, when the underlying facts claimed to support probable cause are not in dispute, whether those "raw facts" constitute probable cause is an issue of law that we must determine de novo. Id. at 8 (citing Ornelas v. United States, 517 U.S. 690, 696-97 (1996)).

Mr. Holder claims that "there are multitudinous material factual disputes." Appellant's Br. at 11. He does not, however, further explain the disputes. His lack of specificity on this point could well constitute waiver. See King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir. 1997) ("It is an established appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . . It is not enough merely to mention a possible argument in the most skeletal way[.]" (ellipsis in original) (internal quotation marks and citation omitted)). Here, we need not rely on this ground, however, because the record does not reflect a genuine factual dispute with respect to the basic material facts known to

Officer Morrow. These "raw facts," see Bolton, 367 F.3d at 8, gave the officers probable cause to arrest Mr. Holder. Our task, as well as the task of the district court, admittedly would have been easier if Officer Morrow's police report and affidavit were a part of the record. Nevertheless, reading Mr. Holder's affidavit along with his voluntary statement and his counsel's eventual acceptance of the district court's interpretation of the facts, we must conclude that Mr. Holder told Officer Morrow at the scene that he had pushed Ms. Holder after she both verbally and physically provoked him. That fact gave Officer Morrow sufficient grounds for believing that a simple assault had occurred. Indeed, even if Mr. Holder's counsel had not admitted that his client actually told the officer that he had pushed his estranged wife, the facts known to the officer would support probable cause. Ms. Holder had told the officer that Mr. Holder had pushed her, and, as we noted in Acosta, "information furnished by a victim is generally considered sufficiently reliable to support a finding of probable cause." 386 F.3d at 10 (citing Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004)).

**B.**

Mr. Holder further contends, however, that he instinctively shoved his wife backward only in response to her initial assault against him. Accordingly, he contends that he had a viable defense against her allegation. Mr. Holder submits that,

- 9 -

when an officer has knowledge of a "bad relationship" between the person under suspicion and a witness to the alleged crime, that witness's credibility must be considered questionable, and, consequently, the officer has a duty to investigate further before making an arrest.

In reliance on Supreme Court precedent, we already have rejected the proposition that a police officer has a standing obligation to investigate potential defenses or resolve conflicting accounts prior to making an arrest. Id. at 11 (citing Baker v. McCollan, 443 U.S. 137, 145-46 (1979)). "[W]e have made it clear that an officer normally may terminate [his] investigation when [he] accumulates facts that demonstrate sufficient probable cause." Id.; see Forest, 377 F.3d at 57 (noting that we have "affirmed that police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause"); see also Palhava de Varella-Cid v. Boston Five Cents Sav. Bank, 787 F.2d 676, 680-81 (1st Cir. 1986).

We also have held that the general rule that an officer need not resolve possible defenses or conflicting accounts is qualified only in limited circumstances. In Acosta, we stated:

> [W]e . . . have disclaimed any unflagging duty on the part of law enforcement officers to investigate fully before making a probable cause determination. While we have recognized that such a duty may arise in highly idiosyncratic circumstances, we have made it clear that an officer normally may terminate [his] investigation when he accumulates facts that demonstrate sufficient probable cause. . . . The

> rule, then, applicable in the wide mine-run of cases, is that once a law enforcement officer unearths sufficient facts to establish probable cause, he has no constitutional duty either to explore the possibility that exculpatory evidence may exist or to conduct any further investigation in hope of finding such evidence.

Acosta, 386 F.3d at 11 (citations omitted). Briefly stated, there are times when the facts made known to the officer, by the complainant or otherwise, combined with the circumstances under which those facts were made known, would cause a reasonable officer to pause before concluding that there is a fair probability that the accused individual had committed a crime. In Acosta, we gave as an example the situation that confronted us in B.C.R. Transport Co. v. Fontaine, 727 F.2d 7 (1st Cir. 1984). In that case, police officers effected an arrest by relying upon an incoherent individual's allegations without further investigation. See id. at 10.

Here, there was no reason, inherent in the situation, for Officer Morrow to believe that Ms. Holder had lied about being pushed by Mr. Holder. In many simple assault situations, there are bound to be accusations and recriminations based either on the immediate circumstances or the parties' long-term relationship. To say that all such situations require an exception to the general rule would amount to an evisceration of the rule. Under the circumstances here, Officer Morrow did not fail "to investigate fundamental evidence at the crime scene." Romero v. Fay, 45 F.3d

1472, 1477 (10th Cir. 1995). Further investigation was not likely to clarify, in any definitive way, the basic divergence in perspective between Ralph and Maria Holder. The officer was not obligated to make a definitive credibility judgment about the relative accuracy of the accounts of the protagonists. The fact that Mr. Holder and Ms. Holder were not on good terms and had given somewhat differing accounts of the encounter did not render unreasonable Officer Morrow's conclusion that it was fairly probable that Mr. Holder had committed a simple assault.[4]

## C.

As we have noted, Mr. Holder was charged with simple assault under New Hampshire statute 631:2-a. He also contends that another New Hampshire statute imposed a heightened standard of probable cause on the officers. That statute reads in pertinent part:

---

[4] Mr. Holder's reliance on several cases from other circuits is unavailing. In Hebron v. Touhy, 18 F.3d 421 (7th Cir. 1994), the Seventh Circuit said that police could not rely solely on allegations of tenants that they had been deprived of water by the landlord because the officers knew at the time that the tenants were being evicted by the landlord. Under those circumstances, said the court, the officers should have, and did, investigate further. Id. 422-23. Notably, the Seventh Circuit also has made it clear that the officer need not go beyond what he already knows to decide whether an affirmative defense applies. Hodgkins ex rel. Hodgkins v. Peterson, 355 F.3d 1048, 1061 (7th Cir. 2004). As we have noted in the text, here the officers had no specific reason to doubt the word of Ms. Holder. Romero v. Fay, 45 F.3d 1472, 1476-77 (10th Cir. 1995), emphasizes the need for a reasonable assessment of all the circumstances by the arresting officer but does not address the particular circumstances facing Officer Morrow in this case.

> [A]n arrest for abuse may be made without a warrant upon probable cause, whether or not the abuse is committed in the presence of the peace officer. When the peace officer has probable cause to believe that the persons are committing or have committed abuse against each other, the officer need not arrest both persons, but should arrest the person the officer believes to be the primary physical aggressor. In determining who is the primary physical aggressor, an officer shall consider the intent of this chapter to protect the victims of domestic violence, the relative degree of injury or fear inflicted on the persons involved, and any history of domestic abuse between these persons if that history can reasonably be obtained by the officer.

N.H. Rev. Stat. Ann. § 173-B:10, II. Mr. Holder contends that the officers ignored state law that required them to identify the instigator and aggressor. He does not, however, provide any additional argument on this point, and we might well be justified in deeming the matter waived for failure to develop a reasoned argument. Nevertheless, because the defendants have addressed the argument, we shall give Mr. Holder the benefit of the doubt and address the merits of his contention.

The Supreme Court has made it clear that, even if we were to consider this state-imposed requirement as part of a state-imposed probable cause inquiry, we should not regard it as part of the federal requirement for probable cause. Rather, it is a distinct state-imposed requirement that simply is not cognizable in an action to vindicate the federal right against unreasonable seizures protected by the Fourth Amendment. In Virginia v. Moore, ___ U.S. ___, 128 S. Ct. 1598, 1606 (2008), the Supreme Court held

- 13 -

that, as long as the arresting officer has probable cause, the Fourth Amendment is not violated when a defendant is arrested for a state offense for which state law does not permit arrest for its violation. The Court reasoned that "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." Id. The Supreme Court further explained, "[o]ur decisions counsel against changing this [Fourth Amendment] calculus when a State chooses to protect privacy beyond the level that the Fourth Amendment requires. We have treated additional protections exclusively as matters of state law." Id. at 1604. In its decision, the Court relied upon a series of cases holding that state law regulations on search and seizure need not be met to fulfill the mandate of the Fourth Amendment. See id. at 1604-05. The Court concluded that "the approach of [its] prior cases is correct, because an arrest based on probable cause serves interests that have long been seen as sufficient to justify the seizure." Id. at 1605.[5]

We have relied on Moore to hold that when a prisoner's conversation with his attorney was recorded in violation of a state

---

[5] The Supreme Court also observed that "linking Fourth Amendment protections to state law would cause them to 'vary from place to place and from time to time.'" Virginia v. Moore, ___ U.S. ___, 128 S. Ct. 1598, 1607 (2008) (quoting Whren v. United States, 517 U.S. 806, 815 (1996)).

- 14 -

regulation, that violation of state law did not operate to nullify, for purposes of Fourth Amendment analysis, the client's consent to the recording. United States v. Novak, 531 F.3d 99, 102 (1st Cir. 2008). Our colleagues in other circuits have reached similar conclusions. In Walker v. Prince George's County, Maryland, 575 F.3d 426, 430 (4th Cir. 2009), the Fourth Circuit, relying on Moore, held that, even if a county ordinance required a police officer to verify that the owner of a wolf lacked a license before seizing the wolf, breach of that requirement would not establish a violation of the Fourth Amendment. In United States v. Brobst, 558 F.3d 982, 989-90 (9th Cir. 2009), the Ninth Circuit relied on Moore to reject an argument that a seizure and arrest was constitutional only if it complied with the protections from search and seizure afforded by Montana law. These cases demonstrate that Moore applies not only to cases where certain crimes are explicitly made unarrestable offenses, but also to cases where state procedural requirements are not followed.[6] We therefore conclude that the New Hampshire statute is irrelevant to the Fourth Amendment analysis that we must undertake to resolve the present claim.

---

[6] See also United States v. Humbert, Nos. 05-1492, 07-3368, 2009 WL 1911007, at *3 (3d Cir. July 2, 2009) (noting that, even if defendant's DNA were obtained in violation of Pennsylvania law, such conduct would not constitute a Fourth Amendment violation), petition for cert. filed (U.S. Sept. 29, 2009) (No. 09-6824).

## III. CONCLUSION

From the foregoing analysis, we must conclude that, at the time he arrested Mr. Holder, the officer had sufficient information to conclude that the state offense of simple assault had taken place. Consequently, there was no violation of the Fourth Amendment, and the district court properly granted summary judgment on that claim. Moreover, because there was no Fourth Amendment violation, we need not discuss independently the issues of qualified immunity, supervisory liability or municipal liability.

For these reasons, the judgment of the district court is affirmed.

Affirmed.