# United States Court of Appeals
## For the First Circuit

No. 11-1649

JAMES J. KENNEY,

Plaintiff, Appellant,

v.

JASON T. HEAD, et al.

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Boudin, Stahl, and Thompson, Circuit Judges.

John R. Mahoney, Asquith & Mahoney, LLP, for appellant.
Marc DeSisto, DeSisto Law, with whom Karen K. Corcoran and
Kathleen M. Daniels were on brief, for appellees.

January 26, 2012

**STAHL**, <u>Circuit Judge</u>. After James J. Kenney was arrested for obstructing a police officer, charges which were later dropped, he brought an action against the two officers involved, Jason Head and Stephen Head, for various alleged violations of 42 U.S.C. § 1983. Ultimately, two of Kenney's claims against Jason Head reached a jury, and the jury found for Head on both counts. Kenney moved for a new trial based on a preserved objection to the district court's decision to exclude certain evidence. After the district court denied Kenney's motion, he appealed. Finding no abuse of discretion, we affirm.

## I. Facts & Background

At around 1:30AM on August 12, 2006, Kenney and his friend Brian Bollinger left a Newport, Rhode Island bar and walked down Thames Street on their way to Bollinger's friend's house. At about the same time, four Newport police officers, Sergeant John Barker and Officers Eric Geoghegan, Jason Head, and Stephen Head,[1] were on "bar patrol," handling crowd control as the bars in the downtown Newport area let out for the night; their duties included keeping the peace and moving the crowds out of the streets to allow vehicular traffic to pass.

According to Kenney's testimony, as he and Bollinger approached the Fifth Element bar, Kenney observed Stephen Head

---

[1] To avoid confusion, we refer to both Jason Head and Stephen Head by their full names.

issuing a traffic citation to a motorcycle operator, Eric Mendoza. Kenney testified that Mendoza's female passenger was hyperventilating and very upset, and that the two people on the motorcycle motioned for him and Bollinger to approach. Kenney and Bollinger went over to Mendoza and conversed with him and his passenger. While standing near the motorcycle, Bollinger yelled, waved his arms, and pointed at the police officers. Responding, Jason Head told Kenney and Bollinger to move along, but neither did. Because of where the two men and the motorcycle were positioned, patrons exiting nearby bars were being forced to walk into the street. After Bollinger continued to yell and point, Jason Head physically escorted Bollinger away from the motorcycle, while Stephen Head provided cover.[2]

Kenney followed after Bollinger and Jason Head and refused to leave the scene despite requests from the officers. Jason Head testified that he felt he could not focus on Bollinger as a result of Kenney's refusal to leave.[3] He further testified:

---

[2] Kenney disputed Jason Head's testimony, claiming in his own testimony that it was Stephen Head, and not Jason Head, who told Kenney and Bollinger to move along and who pulled Bollinger away. To the extent that the record reflects contradictory testimony from Jason Head and Kenney, it is the job of the jury to resolve such factual discrepancies. See, e.g., United States v. Soto-Beníquez, 356 F.3d 1, 44 (1st Cir. 2004) (stating that "[c]redibility judgments are the province of the jury").

[3] Kenney does not dispute that the officers asked him to leave the scene multiple times and in fact testified to that effect.

> I saw Mr. Kenney coming and approaching from the backside, his hands up, his arms around his shoulder height and yelling, You can't touch him. You can't touch him like that.
>
> He was right within feet of my brother [Stephen Head] and also another officer; and I deemed that as a threat, especially after several times of warning him to leave, and I thought that assault was imminent.

Jason Head then warned Kenney that if he did not leave, he would be arrested. According to Jason Head, Kenney still failed to leave, and it was then that he arrested Kenney for obstructing a police officer. Kenney testified that being handcuffed was painful because he had recently undergone shoulder surgery. Kenney was transported to the police station in a cruiser. Subsequently, the charges against him were dismissed.

On August 6, 2009, Kenney filed a complaint against Officers Jason Head and Stephen Head in the United States District Court for the District of Rhode Island, alleging that the events surrounding his arrest constituted a deprivation of his constitutional rights in violation of 42 U.S.C. § 1983.[4] Though the complaint was "not a model of clarity," Kenney v. Head (Kenney I), C.A. No. 09-349 ML, 2011 WL 116856, at *1 n.1 (D.R.I. Jan. 13,

---

[4] Kenney also sued the City of Newport for violations of section 1983, alleging that the City carried out unlawful policies regarding training of police officers and treatment of arrestees. The district court granted summary judgment for the City on January 13, 2011. Kenney v. Head, C.A. No. 09-349 ML, 2011 WL 116856, at *3-5 (D.R.I. Jan. 13, 2011). Kenney does not appeal that order, and we therefore need not address his claims against the City.

2011), the district court construed Kenney's claims against the officers as "false arrest and improper seizure, excessive force, conspiracy, assault and battery, malicious prosecution, and false imprisonment." Id. at *1.

The case proceeded to jury trial, which was held on March 15 and 16, 2011. During the trial, Kenney's counsel sought to elicit testimony from Mendoza as to statements that Officer Geoghegan allegedly made before Kenney approached Mendoza. Counsel for the officers objected to the line of questioning as irrelevant and prejudicial, and the district court sustained the objection on relevance grounds. Kenney's counsel then made the following offer of proof:

> [Mr. Mendoza] would testify that he was approached by Officer Geoghegan and that Officer Geoghegan told him in an angry manner, Put the engine off, and that he then said to Mr. Mendoza that if he did that in my town, I'd shoot you in the F-ing head.

At the close of the first day of trial, the district court granted Stephen Head's motion for judgment as a matter of law as to all claims, and also partially granted Jason Head's motion for judgment as a matter of law, sending to the jury only Kenney's claims against Jason Head for false arrest and malicious prosecution. Each claim centered around whether Jason Head had probable cause to arrest Kenney. The district court instructed the jury "that probable cause exists where the arresting officer, acting upon apparently trustworthy information, reasonably

-5-

concludes that a crime has been committed and that the arrestee is likely a perpetrator," and further instructed the jury that the probable cause determination is "based on objective facts and not the officer's subjective intent." Kenney v. Head (Kenney II), C.A. No. 09-349 ML, 2011 WL 1791885, at *2 n.3 (D.R.I. May 10, 2011). The jury returned a verdict for Jason Head on both counts.

On April 8, 2011, Kenney filed a motion for a new trial,[5] arguing that the jury's inability to consider Geoghegan's alleged statements to Mendoza deprived the jury of the opportunity to adequately understand the officers' motives in arresting Kenney. The district court again considered the propriety of admitting the exchange into evidence and again found the exchange irrelevant to Kenney's claims under Federal Rule of Evidence 401 and therefore inadmissible under Rule 402. Id. at *2. The district court also determined that even if relevant, the evidence was unduly prejudicial under Rule 403. Id. Thus, the district court denied the motion for a new trial. Id. at *3. Kenney timely appealed.

## II. Discussion

Because the basis for Kenney's motion for a new trial is an evidentiary ruling by the district court, we address his appeal

---

[5] The motion was styled as a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), but within the motion, Kenney requested a new trial. The district court therefore considered it to be a motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a), and we do the same. Kenney II, 2011 WL 1791885, at *1 n.1.

in that context. Our review of rulings excluding evidence is for abuse of discretion. United States v. Nguyen, 542 F.3d 275, 279 (1st Cir. 2008). The discretion we accord is broad, "'[i]n deference to a district court's familiarity with the details of a case and its greater experience in evidentiary matters . . . .'" United States ex rel. Loughren v. Unum Group, 613 F.3d 300, 315 (1st Cir. 2010) (quoting Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)). "'[T]he district court abuses its discretion when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.'" Nguyen, 542 F.3d at 281 (quoting United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992)).

Kenney argues that the district court improperly excluded Geoghegan's alleged statements because they were relevant to an "alternative explanation" for his arrest. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6] Under Rule 402, "[e]vidence which

---

[6] The Federal Rules of Evidence applicable to this case were all amended effective December 1, 2011; the changes were "intended to be stylistic only." See Fed. R. Evid. 401 cmt. 2011 Amendments; Fed. R. Evid. 402 cmt. 2011 Amendments; Fed. R. Evid. 403 cmt. 2011 Amendments. Here, for each rule, we use the language from the

is not relevant is not admissible." Thus, for Kenney to succeed in demonstrating relevance, the alternative explanation for the arrest, specifically, that the officer had a "motive for arrest other than probable cause," must go to a fact of consequence.

"The question of probable cause . . . is an objective inquiry," and we do not consider the "'actual motive or thought process of the officer.'" Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (internal citation omitted) (quoting Bolton v. Taylor, 367 F.3d 5, 7 (1st Cir. 2004)); see also Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Instead of considering any subjective motive of an individual officer, "we must view the circumstances from the perspective of a reasonable person in the position of the officer." Holder, 585 F.3d at 504. This standard is consistent with the manner in which the district court instructed the jury before it made its finding of probable cause. Thus, the jury would not have been able to consider any "alternative explanation" for arrest had it been offered into evidence.

Even if it were proper for the jury to consider subjective motive, the relevance of an alternative motive argument is especially weak where, as here, the facts pertaining to the

version that was in force at the time of the district court's rulings.

alleged alternative motive are divorced from the set of facts from which the jury would likely determine probable cause.[7] As the district court correctly pointed out, Kenney's arrest for obstruction, and his consequent action under section 1983, arose out of a temporally distinct set of facts from those having to do with the alleged exchange between Geoghegan and Mendoza, with completely different people taking part. The district court ably explained:

> Testimony regarding the dialogue between Officer Geoghegan and Mendoza would not elucidate the objective facts surrounding Kenney's arrest for obstructing the officers while they detained Bollinger. Kenney's arrest centered around his interactions with officers Jason Head and Stephen Head while they detained Bollinger. The probable cause determination for that arrest bears no direct relationship to Mendoza and Geoghegan's alleged interaction. Consequently, it was irrelevant what Officer Geoghegan, a non-party police officer, said to Mendoza, a non-party witness, prior to Bollinger being detained and Kenney being arrested. Nothing in the interaction would have a tendency to make the existence of any fact relating the issue of probable cause for Kenney's arrest more or less probable.

Kenney II, 2011 WL 1791885, at *2. This proper analysis in no way constituted an abuse of discretion, as the district court weighed

---

[7] Even assuming an alternative motive argument were relevant and proper for the jury's consideration, the jury was in fact told of an altercation between the officers and Mendoza; the only evidence excluded was the particular foul language that Geoghegan allegedly employed.

appropriate factors in a competent manner. See Nguyen, 542 F.3d at 281.

Further, in a probable cause determination, the "only relevant facts are those known to the officer." Holder, 585 F.3d at 504. There is no evidence in the record that the arresting officer, Jason Head, had any knowledge of the alleged exchange between Geoghegan and Mendoza, and it is therefore irrelevant to the probable cause determination.

In his reply brief, Kenney restructures his objection to the exclusion of the evidence, stating that he sought the admission of Geoghegan's alleged statement in order to show "bias in the testimony of [Jason Head] and his fellow officers in order to cast doubt on their testimony." However, none of Kenney's previous filings before the district court or on appeal even hinted at this argument; the word "bias" appears nowhere in his opening brief, nor in his memorandum attached to the motion for a new trial that was submitted to the district court. We therefore consider any argument pertaining to bias to be a new one, and thus waived. See Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 10 (1st Cir. 2011) ("Arguments raised for the first time in a reply brief are waived.") (quoting United States v. Vanvliet, 542 F.3d 259, 265 n.3 (1st Cir. 2008)); United States v. DeSimone, 488 F.3d 561, 570 (1st Cir. 2007) ("The failure of counsel to have informed the trial court of the correct evidentiary theory under which evidence is

sought to be admitted is ordinarily a waiver of the right to argue that theory on appeal."). In "exceptional circumstances," such waived arguments may be reviewed for plain error. DeSimone, 488 F.3d at 570.

While it is true that "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony," United States v. Abel, 469 U.S. 45, 52 (1984), Kenney cannot here overcome the plain error standard. Kenney's argument regarding why or how the officers showed bias against him is both extremely tenuous and undeveloped in his reply brief. The district court's decision to exclude Geoghegan's alleged statement does not come close to constituting plain error. See DeSimone, 488 F.3d at 570 (holding that the exclusion of evidence rises to the level of plain error only where the ruling was "not only wrong but went to the fairness, integrity and public reputation of the trial.").

Alternatively, even if there were some argument that Geoghegan's alleged statement was relevant, the district judge found that Federal Rule of Evidence 403 barred its admission. Rule 403 allows for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." The district court determined that the admission of Geoghegan's

alleged statement would be unduly prejudicial, as it risked "confusing the issues and misleading the jury as to the matter before it, namely the probable cause determination for [Kenney's] arrest on an obstruction charge." Kenney II, 2011 WL 1791885, at *2. As "Rule 403 judgments are typically battlefield determinations, and great deference is owed to the trial court's superior coign of vantage," we reverse a district court's 403 ruling only "in extraordinarily compelling circumstances." United States v. Bunchan, 580 F.3d 66, 71 (1st Cir. 2009) (internal quotation marks and citations omitted); see also Sprint, 552 U.S. at 384 (the "wide discretion" accorded to district court for evidentiary rulings is particularly important with respect to Rule 403 determinations). Especially because we agree with the district court that there was no probative value to the proffered evidence, the district court did not err in its determination that the admission of Officer Geoghegan's alleged statement would have been unduly prejudicial.

As there was no error in the district court's evidentiary ruling about which Kenney complains,[8] we find no reason to reverse for a new trial. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009) ("We reverse only if 'the verdict is

---

[8] Kenney originally argued that certain statements made by Jason Head's counsel in his closing argument also constituted error. However, Kenney's counsel abandoned this claim at oral argument, noting that it was "not an appealable issue"; therefore, we need not address it.

so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice.'") (quoting <u>Levesque</u> v. <u>Anchor Motor Freight, Inc.</u>, 832 F.2d 702, 703 (1st Cir. 1987)).

### III. Conclusion

We <u>affirm</u> the district court's denial of the motion for a new trial.