**Robert BeVIER and Annette BeVier, Plaintiffs-Appellees,**

**v.**

**Steven HUCAL, Defendant-Appellant.**

**No. 85–2769.**

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1986.

Decided Nov. 18, 1986.

---

Rita M. Novak, Illinois Atty. Gen. Office, Chicago, Ill., for defendant-appellant.

Thomas R. Appleton, Preseney, Kelly & Appleton, Springfield, Ill., for plaintiffs-appellees.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

This 42 U.S.C. § 1983 case was tried before a United States magistrate. Defendant appeals from judgment in favor of plaintiffs in the amount of $8,206.80 each. The magistrate also awarded attorneys' fees and costs in the amount of $3,888.63. At issue is whether the defendant police officer had probable cause to arrest and detain plaintiffs.

In the summer of 1983, Robert and Annette BeVier worked for Links Amusements, a company that operated carnival rides at state and county fairs. Robert drove trucks and assembled rides; Annette later was employed to work in the cookhouse. They, along with their children, traveled with the carnival, camping out in a tent. The BeViers purchased a tent and

other camping equipment and packed cooking utensils, bedding, clothing, and toys for the children.

The amusement company stopped at the Illinois State Fair in Springfield in early August. The BeViers set up camp in a ravine known as "Happy Hollow" after being told to move from a shaded hilltop area. The BeViers employed a teen-aged girl named Molly to care for the children during their working hours. They instructed Molly on how to care for the children, including to keep them out of the sun, change their diapers regularly, and bring them to the cookhouse for meals. Molly did not follow those instructions.

On August 17, 1983, Molly took one of the children, Clifford, to the Red Cross Center on the fairgrounds because he appeared to be bleeding when he urinated. Robert and Annette were summoned to the Center and instructed to take Clifford to St. John's Hospital in Springfield. At the hospital Clifford was diagnosed as having severe diaper rash and the BeViers were advised to change his diapers frequently, use paper diapers, and apply the prescribed medication. The next day Robert went into town to purchase the paper diapers and fill the prescription. The BeViers fired Molly and hired a new babysitter, Bobbie. Bobbie was given the same care instructions as Molly; specifically, she was told to change Clifford's diaper every hour, applying the medication. By the next day the rash seemed to be improving.

On Friday, August 19, Robert checked the children in the morning and found them in the shade. Annette saw the children at breakfast and lunch and they appeared to be fine.

Late that same afternoon defendant Steven Hucal and Ray Thompson, Illinois state police officers, were patrolling the Happy Hollow area when they spotted the BeViers' tent. They had heard that a child living in that area had been taken to the hospital. There was no shade in the ravine where the tent was located. The tent was located about 40 to 50 feet from diesel generators and maintenance equipment.

Livestock was also in the area, which consequently smelled of manure. Sanitary facilities were some distance from the area.

They saw the BeViers' two young children sitting in direct sunlight. The temperature was over 100°. Clifford was sitting still in a swing with his head slumped to one side and Robert, Jr., was listless. According to Hucal, both children were filthy and their skin looked sunburned. Hucal approached a teen-aged girl, sitting in the shade, who said she was watching the children. She showed him Clifford's diaper rash and told him that Clifford had been taken to the hospital because he appeared to be urinating blood. Hucal did not question her further but instead allowed her to leave the area.

Hucal contacted the state police headquarters and requested an ambulance. Robert arrived as the children were being placed in the ambulance and identified himself as their father. Without asking Robert any questions, Hucal arrested him for child neglect. The children were taken to the Red Cross Center and Robert was taken to police headquarters. When Annette arrived at the police station she was also arrested.

While at police headquarters Hucal contacted the Illinois Department of Children and Family Services (DCFS) to arrange temporary foster care for the children. He spoke with Bob Randall, a child abuse and neglect investigator for the DCFS, and described the BeViers' situation. Randall replied that he did not consider the situation abusive and suggested alternatives to arrest. Hucal became angry and explained that the arrests had already been made.

Randall picked up the children at the Red Cross Center later that evening and placed them in foster homes. Robert and Annette were taken to the Sangamon County Jail. They were not released until late Monday afternoon, although no charges were ever filed against them. Robert and Annette were reunited with their children the next day. During their incarceration most of their property was lost when Links Amusements moved to the next destination. Rob-

ert and Annette brought this § 1983 action alleging that they were arrested without probable cause. They sought compensatory and punitive damages against Hucal and Thompson; Thompson was later dismissed as a defendant. Damages of $16,413.60 and attorney's fees of $3,888.63 were awarded to the plaintiffs. The magistrate, in his memorandum opinion, found that the arrests were unreasonable under the circumstances. Although he found that the children's condition and physical living environment "would only weakly support an arrest for intentional child neglect," the magistrate faulted Hucal for not further questioning the teen-ager on the scene or the parents, and disregarding Randall's assessment of the situation.

Defendant raises two issues on appeal. He claims first, that the magistrate erred in determining that there was no probable cause and second, that he is entitled to immunity from damages. Because we agree that Hucal acted unreasonably by failing to investigate the circumstances further, we affirm the magistrate's judgment.

Discussion

A. Probable Cause

■ We must decide whether Hucal had probable cause to arrest plaintiffs for child neglect and, if not, whether he had a reasonable good faith belief that probable cause existed. Police officers may arrest without a warrant if the information available to the officer at the time of the arrest indicates that the arrestee has committed a crime. Thus an arrest is not unconstitutional merely because the information relied upon by the officer later turns out to be wrong. *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir.1983). Probable cause is a fluctuating concept; its existence depends upon " 'factual and practical considerations of everyday life.' " *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)). It is the totality of circumstances, including

the facts available to defendant, that are dispositive. *Gates*, 462 U.S. at 231–32, 103 S.Ct. at 2328–29; *United States v. Fooladi*, 703 F.2d 180 (5th Cir.1983). Police officers are allowed to make mistakes, but those mistakes must be reasonable ones. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); *McKinney*, 726 F.2d at 1187.

Defendant arrested plaintiffs on a charge of child neglect under Ill.Rev.Stat. ch. 23, ¶ 2361, which provides:

Any parent, legal guardian, or person having the custody of a child ... who knowingly or wilfully causes, aids, or encourages such person to be or to become a dependent and neglected child ..., who knowingly or wilfully does acts ... [or] fails to do that which will directly tend to prevent such state of dependency or neglect is guilty of the Class A misdemeanor of contribution to the dependency and neglect of children.

Paragraph 2360 defines "neglected child" as:

any child who ... is destitute, homeless or abandoned; ... or has not proper parental care or guardianship; ... or has a home which by reason of neglect, cruelty or depravity on the part of its parents, guardian or any person in whose care it may be is an unfit place for such child....

■ We agree with both the magistrate and the defendant that the facts as known by defendant weakly supported an inference that the children were being neglected. The children were in direct sunlight on an extremely hot day; they were listless, filthy, and living near machinery and livestock; and one had severe blistering diaper rash for which he had been taken to the hospital. However, the child neglect statute requires that a parent act knowingly or wilfully. Therefore, Hucal needed some evidence that the BeViers knew of their children's predicament but failed to prevent it. There was no evidence of such knowledge. Instead Hucal knew that the BeViers had taken Clifford to the

hospital and had retained a new babysitter, evidence that they were attempting to remedy the situation.

Hucal's mistake was failing to question the parents, the Red Cross Center personnel, or the teen-ager watching the children. This mistake was unreasonable. A few questions would have given defendant some important information. He would have discovered that Robert and Annette had instructed each of the babysitters to keep the children in the shade and their diapers dry, sanitation facilities were nearby, Annette gave the boys daily showers, Clifford's diaper rash had been seen by a doctor, and Robert and Annette were treating it with the proper medication. Once this information surfaced, Hucal would have known that the BeViers were not neglecting their children. Defendant's brief states, "None of those facts were available to Sgt. Hucal at the time the BeViers were arrested." This statement is incorrect. Hucal had merely to ask any of several individuals at the scene.

The extent to which a police officer must investigate prior to arrest or search has been discussed recently in the Seventh Circuit. In *Moore v. The Marketplace Restaurant,* 754 F.2d 1336 (7th Cir.1985), plaintiffs were arrested when a restaurant owner complained to the police after they had refused to pay the check. The police arrived at the plaintiffs' homes and arrested them once they admitted to having been at the restaurant that evening. No further questions were asked. The court held that the police did not have probable cause to arrest. In its reasoning the court noted that the plaintiffs were not fleeing the scene (they were asleep in their campers), they were not dangerous, and no serious crime had taken place. *Id.* at 1345. Because the arrest could have been avoided if the arresting officer had conducted a proper investigation, summary judgment was improper. *Id.* at 1345–46 ("it is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention").

Similarly, in *Llaguno v. Mingey,* 763 F.2d 1560 (7th Cir.1985), this Court balanced the amount of information available to the police with the situation they faced to decide whether probable cause to search existed. "The amount of information that prudent police will collect before deciding to make a search or an arrest, and hence the amount of probable cause they will have, is a function of the gravity of the crime, and especially the danger of its imminent repetition." *Id.* at 1566–67. Although the police acted on minimal information and weak inferences because the danger was so great (police were searching for two murderers), there was sufficient probable cause. *Id.* at 1567.

Under Seventh Circuit precedent, then, probable cause is a function of information and exigency.[1] Comparing the facts in *Moore* and *Llaguno* with this case, it is evident that Hucal did not have the requisite probable cause to arrest the BeViers. Although child neglect is certainly a serious crime, the children had been removed from the area so that there was no threat of its imminent repetition. There was no fear that Robert and Annette were about to flee, and the investigation would not have significantly interfered with Hucal's police duties, see *United States v. Russell,* 655 F.2d 1261 (D.C.Cir.1981), vacated in part, 670 F.2d 323, certiorari denied, 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982); *Winfield v. United States,* 430 F.Supp. 912 (S.D.N.Y.1977).

---

1. In *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432 (7th Cir.1986), this Court concluded that there is no general duty to investigate further after acquiring information sufficient to establish probable cause. *Id.* at 437–42. In that case the police arrested the plaintiff for shoplifting. The security guard at the store told police that he saw the plaintiff running down the aisles pulling items from his pockets; plaintiff denied this to the police. The Court rejected plaintiff's contention that the police should have questioned other witnesses before arresting him. *Gramenos* essentially involved a credibility contest between the plaintiff and a store security guard. This case is distinguishable because Hucal did not even question the persons he arrested; more investigation was needed before probable cause could be established.

A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place. In *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437–42 (7th Cir.1986), we held that an officer who has established cause on every element of the crime need not continue investigating to check out leads or test the suspect's claim of innocence. Here, in contrast, without doing some further investigation Hucal had no information on the BeViers' intent, an essential element of child neglect, and no way to tell whether the children's situation was attributable to the BeViers' decisions, to Bobbie's disappearance (if the teen-ager on the scene was not Bobbie), or to Bobbie's disregard of the BeViers' specific instructions (if the teen-ager was Bobbie). In the present case Hucal had at least four sources of information available to him; he simply chose not to ask anything of anyone. In his brief Hucal states that it was the teen-ager watching the children who failed to tell him who she was, that Molly had been discharged, the diaper rash was being treated, or she had been instructed to apply the medication and change Clifford's diapers hourly. As the investigating and arresting police officer, however, it was up to Hucal to extract that information. Because this information could have been easily obtained and was necessary before concluding that Robert and Annette had intentionally neglected their children, Hucal was unreasonable in not making those inquiries. See *Moore v. The Marketplace Restaurant*, 754 F.2d 1336 (7th Cir.1985); *United States v. Allen*, 629 F.2d 51, 57 n. 6 (D.C. Cir.1980).

■ In addition, Hucal ignored the suggestion of Randall to deal with the situation in an alternative manner. Randall, an experienced investigator of child abuse and neglect for the DCFS, informed Hucal that his description did not appear to be a violation of the child neglect statute. The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause. *People v. Quarles*, 88 Ill.App.3d 340, 43 Ill.Dec. 497, 410 N.E.2d 497 (1980) (when police were informed by landlord that defendant lived in apartment, they should have released him since they no longer had probable cause to believe that defendant had committed the offense of attempted burglary). This is further evidence that Hucal's arrest and detention of plaintiffs were unreasonable. Although the police must be allowed some margin of error, a police officer evaluating a situation for probable cause must utilize the means at hand to minimize the risk of error. See 1 LaFave, Search & Seizure § 3.2, at 467. Because Hucal failed to avail himself of the opportunity to elicit further facts which would have indicated that the arrest should not have been made, the arrest of plaintiffs was without the requisite probable cause.

## B. Immunity

■ Hucal claims in the alternative that even if probable cause did not exist at the time of the arrest, he reasonably believed that there was probable cause and thus should be immune from damages. Law enforcement officers are entitled to immunity from damages if their actions are taken with a reasonable belief that they comport with constitutional requirements. *Coleman v. Frantz*, 754 F.2d 719 (7th Cir. 1985). According to the Supreme Court, the standard of immunity is whether "officers of reasonable competence could disagree on the issue" of whether the arrest was reasonable. *Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); see *Benson v. Allphin*, 786 F.2d 268, 275–76 (7th Cir.1986). In the above probable cause analysis we decided that Hucal had acted unreasonably in failing to make further inquiries. Applying *Malley*, we agree with the magistrate that no reasonably well-trained officer could have come to Hucal's conclusion, viewing the situation objectively. Hucal had no evidence that the BeViers knew of their children's immediate condition, but did have

evidence that the previous situation was being remedied, and Hucal knew that the social worker thought arrest and detention were unnecessary. For those reasons, we conclude that Hucal is not entitled to good faith immunity.

For the reasons discussed above, the judgment of the magistrate is affirmed.