# United States Court of Appeals

## For the First Circuit

No. 03-2652


RICHARD J. FOREST; NANCY FOREST; ELIZABETH FOREST

Plaintiffs - Appellants


v.


PAWTUCKET POLICE DEPARTMENT; CITY OF PAWTUCKET, by and
through its Treasurer, Ronald Wunschel; SCOTT M.
FEELEY, in his individual and official capacity;
JOHN CLARKSON, in his individual and official capacity;
GEORGE L. KELLEY, in his individual and official capacity;
DENNIS SMITH, in his individual and official capacity;
WILLIAM MAGILL, in his individual and official capacity;

Defendants - Appellees

JEFFREY T. MONTELLA; GAIL MONTELLA, individually and as
parent/legal guardian of Jeffrey T. Montella;
CHARLES MONTELLA

Defendants

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, Senior U.S. District Judge]

———————————————

Before
Torruella, Circuit Judge,
Rosenn, Senior Circuit Judge,[*]
Howard, Circuit Judge.

———————————————


———————————————

[*] Of the United States Court of Appeals for the Third
Circuit, sitting by designation.

<u>Jeffrey D. Sowa</u> was on brief for appellant.
<u>Marc DeSisto</u> was on brief for appellee.

---

July 28, 2004

---

**ROSENN, <u>Senior Circuit Judge</u>**. This appeal presents an important, although not infrequent, question arising out of the delicate relationship between a teacher and student in the public school system. The question is: how deep must a police investigation extend before there is sufficient probable cause for the arrest of a school teacher accused of sexually molesting a student? At stake is the professional career and reputation of a high school teacher on one hand, and on the other the safety, health, and moral values of the student. Caught between the two are the police officers called to investigate and, if warranted, to arrest for prosecution.

A fifteen-year-old male student complained to his high school principal that his special education teacher had sexually molested him while in class. The complaint led to an investigation and the arrest of the teacher by the Pawtucket, Rhode Island, Police Department. The charge against the teacher, Richard Forest ("Forest"), a Massachusetts resident, was ultimately dismissed by the state court. Forest thereupon brought a civil suit under 42 U.S.C. § 1983 in the United States District Court for the District of Rhode Island against the City of Pawtucket, the Police Department, and individual officers, claiming a violation of his Fourth Amendment rights under the Federal Constitution.[1] The

---

[1] The pertinent language of the Fourth Amendment provides: "The right of the people to be secure in their persons, houses,

District Court found that the police officers had reasonable probable cause to arrest Forest and granted summary judgment in their favor. Forest timely appealed. We affirm.

I.

Forest had been employed by the Pawtucket School District in Rhode Island as a full-time special education teacher at Tolman High School for 30 years. At the time of the events relevant to this case, he taught a "life skills" course for special needs children. Jeffrey Montella ("Montella"), one of his students, left Forest's classroom on January 24, 2000, and went to the principal's office to report an incident of misconduct. Montella informed Principal Rousselle ("Rousselle") that Forest touched him inappropriately in a sexual manner during class. Montella provided a written statement to Rousselle detailing the incident.

At approximately 5 p.m. that evening, Montella and his mother, Gail Montella, went to the Pawtucket Police Department and filed a complaint against Forest. Montella gave Officer Dennis Smith a written statement alleging that Forest "grabbed and rubbed [his] penis during class." Montella also disclosed that Forest had rubbed his shoulders and legs in the past, in a way that made him uncomfortable.

Officer Smith referred the complaint to Detectives Scott Feeley and William Magill, who reinterviewed Montella and his

papers, and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation."

-4-

mother on that same evening. During the second interview, Montella drew a diagram depicting the seating arrangement in the class at the time of the alleged incident. The diagram shows that when the misconduct allegedly occurred, there were four other students in the classroom, two sitting beside Montella and two sitting across the room facing him. A teaching assistant, Cheryl Ann Lainhart, was seated a short distance to the left of the row occupied by Montella and his two fellow students.

Gail Montella also provided a written statement to the detectives. She affirmed that her son told her about the inappropriate touching that occurred earlier in the day, and that her son had complained in the past about Forest rubbing his shoulders and thigh. Ms. Montella explained that when her son originally complained of inappropriate touching, she did not believe it to be significant because she assumed that Forest was simply being nice to her son. She also assumed that Forest's attention to Montella was not out of the ordinary, as Forest had been generous with the Montella family in the past, giving them a large bag of gifts at Christmas and a $50 gift certificate to a grocery store. Ms. Montella explained in her statement that she believed her son's story about the alleged misconduct in the classroom because Forest had always been nice to her family, and therefore her son had no reason to lie in order to harm him.

Detectives Feeley and Magill interviewed Principal Rousselle on the same evening of the complaint. Rousselle

confirmed that Montella had come to his office during class that day, made an oral complaint, and provided a written statement regarding the incident. After confirming the incident with Rousselle, the detectives called Forest at 8:30 p.m., leaving a message on his answering machine, and again at 9:10 p.m., when they reached Forest on the phone. The detectives asked Forest to come to the police station, but Forest declined because he could not reach his attorney. At 10 p.m., after speaking with his attorney, Forest called the detectives and agreed to voluntarily appear at the police station. On January 26, 2000, Forest was arrested and charged with second degree sexual assault.

Detective Feeley prepared the affidavit in support of the arrest warrant on the evening of January 24, after he received the complaint from Montella, verified the incident with Montella's mother, and confirmed the incident with Principal Rousselle. Feeley did not interview Forest, the teaching assistant, or any other students present in the classroom at the time of the alleged incident. But, Feeley stated that he found Montella's claim to be credible.

The affidavit in support of the arrest warrant recounted Montella's story, explaining that Forest asked Montella about his new fleece jacket, and allegedly rubbed Montella's penis while he reached upward to feel the jacket material. Feeley did not include in the affidavit an explanation that Montella was a special needs student taking Ritalin for his Attention Deficit Hyperactivity

Disorder, nor did he indicate that there were other students in the classroom during the alleged incident who may have witnessed the event. Bail Commissioner Ernest Pratt reviewed the affidavit, found probable cause to arrest Forest, and signed the warrant.

The Pawtucket School Department investigated Montella's allegation and found that "[t]here was no credible evidence presented that Jeffrey Montella was fondled sexually by Richard Forest in the Life Skills Class." Subsequently, the Rhode Island Attorney General's office declined to prosecute, and the Rhode Island state district court dismissed the case.

After the charges were dismissed, Forest brought suit raising eleven counts against multiple defendants.[2] Counts I through VII, which included claims brought under the Fourth and Fifth Amendments plus multiple state law claims, were raised against the city, the police department, and several officers involved ("Pawtucket Defendants"). Counts VIII through XI included state law claims raised against Montella and his family members ("Montella Defendants"). Only the Pawtucket Defendants filed a motion for summary judgment, which was granted by the District Court. Therefore, counts VIII through XI involving the Montella Defendants were not considered on summary judgment before the

_____

[2] The District Court maintained jurisdiction over the original federal claims pursuant to 28 U.S.C. § 1331, and over the state law claims pursuant to diversity jurisdiction, 28 U.S.C. § 1332(a). This court has jurisdiction over an appeal of the District Court's grant of summary judgment under 28 U.S.C. § 1291.

District Court, and are not now before this court on appeal. Furthermore, Forest only appeals the District Court's grant of summary judgment on Count I involving the alleged violation of his Fourth Amendment rights. Our review is limited to this single issue.

## II.

Forest's Fourth Amendment claim asserts that his constitutional rights were violated because he was arrested without probable cause. The District Court granted summary judgment on this claim based on two separate, but related grounds. First, the District Court found that the detectives had probable cause to arrest Forest, and thus there was no constitutional violation. The Pawtucket Defendants were therefore entitled to qualified immunity. Second, the Court's finding of no constitutional violation also justified summary judgment on the merits of the § 1983 claim. See Morales v. Ramirez, 906 F.2d 784, 787 (1st Cir. 1990) (explaining that although qualified immunity and the merits of § 1983 suit are separate inquiries, a finding of no constitutional violation may resolve both).

We review the District Court's grant of summary judgment de novo. Grant's Dairy-Maine LLC v. Comm'r of Maine Dept. of Agric., Food and Rural Res., 232 F.3d 8, 14 (1st Cir. 2000). We review all evidence in the light most favorable to the nonmoving party, and will affirm if we conclude that there are no issues of material fact, and the Appellees deserve judgment as a matter of

law.  Fed. R. Civ. P. 56(c); Morrissey v. Boston Five Cents Savings Bank, 54 F.3d 27, 31 (1st Cir. 1995).

III.

Qualified immunity is not a defense on the merits, but is "an entitlement not to stand trial or face the other burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200 (2001) (citation omitted).  Consequently, it is important to resolve the immunity question as early as possible in the litigation.  Id. at 201. Government officials will not be entitled to qualified immunity if their conduct violated a statutory or constitutional right that is "clearly established."  Id.  Thus, the first threshold inquiry must be whether the facts, taken in the light most favorable to the party claiming injury, show that an officer's conduct violated a statutory or constitutional right.  If the facts do not support the violation of a right, then the inquiry ends at that point, and the court does not proceed to the second question of whether the right allegedly violated was clearly established.  Id.

Probable cause analysis requires inquiry into the facts and circumstances within the arresting officer's knowledge at the time of arrest to determine if a person of "reasonable caution and prudence" would have believed that the defendant committed a crime. Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985).  It does not require evidence to prove guilt beyond a reasonable doubt. "[P]robable cause need not be tantamount to proof beyond a reasonable doubt . . . . Probability is the touchstone."  U.S. v.

<u>Grant</u>, 218 F.3d 72, 75 (1st Cir. 2000) (citation omitted). "The probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable." <u>U.S.</u> v. <u>Winchenbach</u>, 197 F.3d 548, 555-56 (1st Cir. 1999).

This court has affirmed that police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause. <u>B.C.R. Transport Co., Inc.</u> v. <u>Fontaine</u>, 727 F.2d 7, 10 (1st Cir. 1984) (noting that although not a per se rule, a probable cause determination predicated on information furnished by the victim is generally considered reliable). Therefore, the primary inquiry in this case is whether there is any evidence that the officers acted unreasonably when they determined that Montella's accusation was credible, in light of all the circumstances known at the time.

Forest argues that the accusation was inherently unreliable because Montella alleged that the incident occurred in front of an entire classroom of students and a teaching aide, none of whom were interviewed prior to the arrest. However, the facts known to the detectives at the time of arrest do not support this conclusion. Montella did not claim that Forest molested him in clear view of an entire classroom of students. According to the diagram provided by Montella, there were only four other students and a teaching assistant in the class at the time of the incident, and only two of the other students were facing Montella. The

others in the room were situated to Montella's side where they would not necessarily have had a clear view. Also, Montella explained that Forest was commenting on, and touching Montella's jacket when the alleged molestation occurred. Therefore, it was reasonable for the detectives to conclude that even an eye witness would not necessarily have recognized any inappropriate touching.

Forest also argues that because Montella was a special needs student, his credibility should have been questioned. But there is no evidence that Montella's condition of Attention Deficit and Hyperactivity Disorder, and his prescription of Ritalin, had any effect on his credibility. Rather, Detective Feeley believed that Montella was not mentally incapacitated in any relevant manner, and made an independent determination that Montella was "fairly intelligent and credible."

Finally, Forest argues that under Bevier v. Hucal, 806 F.2d 123 (7th Cir. 1986), the officers were required to interview readily available witnesses before seeking an arrest warrant. However, Bevier does not support Forest's argument. In Bevier, the police arrested two parents for child abuse with absolutely no investigation or evidence supporting the abuse, even though witnesses who could have been consulted were readily available. Id. at 128. In this case, the police did conduct an investigation. The detectives interviewed Montella twice to ascertain his primary accusation, interviewed his mother to verify the account and learn that Montella had complained in the past of inappropriate touching,

and confirmed the events with Principal Rousselle. All of the information gleaned from these interviews and statements provided reasonable evidence to support probable cause.

Forest asserts that the officers should have interviewed the other students in the classroom and the teaching assistant before seeking the arrest warrant. However, the law is clear that once police officers are presented with probable cause to support an arrest, no further investigation is required at that point. See, e.g., Brodnicki v. City of Omaha, 75 f.3d 1261, 1264 (8th Cir. 1996) (noting that officers are not required to conduct mini-trials before arrest).

We agree with the District Court that probable cause existed to arrest Forest. Therefore, there was no violation of Forest's Fourth Amendment rights, and the Pawtucket Defendants are entitled to qualified immunity.

IV.

Forest argues in the alternative that the Pawtucket Police exaggerated the evidence presented in the arrest warrant knowing that Montella's claim was not credible. A Fourth Amendment violation may be established if a defendant can show that officers acted in reckless disregard, with a "high degree of awareness of [the statements'] probable falsity." Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (citation omitted). Forest asserts that the officers acted with reckless disregard because they relied on witnesses who were not present during the incident (i.e. Montella's

mother and Principal Rousselle), and because the officers added information about Forest's gift giving to the Montella family, which was speculative and irrelevant.

We believe that Forest's claim of reckless disregard must fail. First, the detectives did not rely on the statements of Montella's mother and Principal Rousselle to verify the account of the alleged assault in the classroom. Rather, the detectives relied on those statements to confirm (1) that Montella actually left the classroom and went straight to the principal's office to report the incident, and (2) that Montella had complained of inappropriate touching by Forest in the past. Both of these items were relevant to a finding of probable cause. Second, the inclusion of Forest's generosity towards the Montellas in the past was relevant when considered in the context explained by Montella's mother. Gail Montella stated that she believed her son's claim because he had no reason to harbor any ill will towards Forest; Forest had been kind to the Montellas in the past. Therefore, the inclusion of this fact directly supports Montella's credibility.

Forest also argues that the officers omitted crucial facts from the affidavit, particularly that the alleged assault took place in front of the entire class and the teaching assistant. Yet, as explained above, Forest's assertion that the incident took place in front of the entire class is an overstatement. The entire class consisted of only five students including Montella, and only two of the students were facing Montella at the time of the alleged

incident.  Additionally, Montella alleged that the touching took place under the pretense of Forest's feeling his jacket, so under this scenario, even an eye witness may not have realized what was occurring.  Therefore, the officer's omission of these facts from the affidavit was not misleading, and there is no basis for the claim of reckless disregard.

V.

For the reasons set forth above, the District Court's grant of summary judgment is affirmed.  Each party is to bear its own cost.