# United States Court of Appeals
## For the First Circuit

No. 23-1794

JOHN DEATON,

Plaintiff, Appellant,

v.

TOWN OF BARRINGTON; JAMES CUNHA, Town Manager, Town of
Barrington; DAVID WYROSTEK, individually, and in his official
capacity as police officer for the Town of Barrington; ANTHONY
DECRISTOFORO, individually, and in his official capacity as
police officer for the Town of Barrington; TIMOTHY HARRINGTON,
individually, and in his official capacity as police officer for
the Town of Barrington; JOHN LACROSS, individually, and in his
official capacity as police officer for the Town of Barrington,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Gelpí, Howard, and Rikelman,
Circuit Judges.

John E. Deaton, with whom Deaton Law Firm LLC, was on brief,
for appellant.
Marc DeSisto, with whom Sarah D. Boucher, Kathleen A. Hilton,
and DeSisto Law LLC, were on brief, for appellees.

May 3, 2024

**GELPÍ, Circuit Judge.** Plaintiff-Appellant John Deaton ("Deaton") was arrested and charged with assault, battery, and disorderly conduct. Although the charges were later dismissed, he brought state and federal claims against the Town of Barrington and other individuals in their capacities as police officers and town manager (the "Defendants"). The Defendants removed the case from Providence County Superior Court to the United States District Court for the District of Rhode Island, Deaton's motion for remand was unsuccessful, and then he added federal claims via an amended complaint. The district court granted summary judgment in favor of the Defendants on most counts, and remanded three counts, one in full and two in part, for the state court to resolve. Deaton now appeals, arguing that the district court improperly found that probable cause to arrest him existed, that it improperly denied his post-judgment motion, and that it should have abstained and remanded to state court to allow the state claims to be resolved. We disagree and affirm.

## I. Background

When reviewing a grant of summary judgment, we construe the relevant facts in the light most favorable to the non-moving party, in this case, Deaton. See Mancini v. City of Providence ex

- 3 -

rel. Lombardi, 909 F.3d 32, 37 (1st Cir. 2018).  The facts below are undisputed unless noted otherwise.

**A. Facts**

In September 2017, Deaton and his partner attended a Pop Warner football game in Barrington, Rhode Island.[1]  Deaton's partner's ex-husband, Ronald Warner ("Warner"), and his new partner were also in attendance.  A verbal and physical altercation occurred between Deaton and Warner, and while the details of the encounter are disputed, it is undisputed that Deaton said something to the effect of not wanting to "whip [Warner's] ass."  Warner called 911 and claimed he was assaulted by Deaton.  While Warner claimed that Deaton "put his hands on [Warner's] throat," Deaton claimed that he pushed Warner away and likely touched his throat or "neck area."  A football coach told the men to "knock it off and get out of there."

The Barrington Police Department dispatched Officers David Wyrostek ("Officer Wyrostek") and Anthony DeCristoforo ("Officer DeCristoforo") to Barrington High School where Officer Wyrostek arrived first and spoke with Warner.  Warner claimed Deaton placed his hands on his throat and choked him.  Officer Wyrostek did not notice any apparent injuries on Warner. As Deaton drove by, Warner pointed him out to Officer Wyrostek who

---

[1] For those not familiar, Pop Warner football is a youth football program.

immediately pulled Deaton over. Officer Wyrostek allowed Deaton to exit the car and told Deaton that Warner claimed Deaton choked him, which Deaton denied. Shortly after this exchange, Officer Wyrostek placed Deaton in handcuffs and told him he was being arrested for simple assault and battery and disorderly conduct.

Officer DeCristoforo arrived at the field shortly after Officer Wyrostek pulled over Deaton. Officer DeCristoforo spoke with Warner and his partner, confirming the account Warner gave to Officer Wyrostek. Officer DeCristoforo obtained a witness statement from the football coach who stated that he witnessed Deaton "put his right hand on [Warner's] throat."[2] Officer DeCristoforo noted that Warner's throat was not red, swollen, or had any indication of finger marks. After Deaton had been handcuffed, Officer DeCristoforo told Officer Wyrostek that he had a witness who confirmed Warner's story. Later that day, Officer DeCristoforo became aware of an active arrest warrant for Warner who was then arrested pursuant to that warrant.[3] After approximately two hours at the police station, Deaton was released on his own recognizance.

---

[2] There is a dispute over when this conversation occurred. Deaton claims it was after he was arrested while the Defendants claim it was before Deaton's arrest.

[3] The warrant for Warner's arrest was for assault and battery in an unrelated incident.

## B. Procedural History

The Town of Barrington prosecuted the charges against Deaton. The criminal case was scheduled for trial in state court, but the town dismissed the charges without prejudice, with Warner's consent, in exchange for Deaton's completion of thirty hours of community service. Deaton then filed suit in Providence County Superior Court. Deaton alleged civil rights violations pursuant to 12 R.I. Gen. Laws § 12-7-3 (1956) for unlawful arrest (Count I), civil rights violations for false imprisonment under 12 R.I. Gen. Laws § 12-7-1 (1956) (Count II), malicious prosecution (Count III), conspiracy to violate his civil rights under 9 R.I. Gen. Laws § 9-31-1 (1956) (Count IV), invasion of privacy (Count V), assault and battery (Count VI), failure to supervise (Count VII), and municipal liability (Count VIII). Deaton also alleged violations of the United States Constitution, including the "right to be secure in his person [and] to equal protection of the laws of Due Process in violation of the Fourth and Fourteenth Amendments."

The Defendants removed the matter to the United States District Court for the District of Rhode Island on federal question grounds. 28 U.S.C. §§ 1441, 1446. Deaton moved to remand, which the district court denied because the complaint "clearly alleged violations of state and federal law." Deaton then amended his complaint, adding claims of unreasonable search and seizure

- 6 -

pursuant to 42 U.S.C. § 1983 (Count IX), conspiracy to deprive him of his constitutional rights pursuant to 42 U.S.C. § 1983 (Count X),[4] and failure to intervene pursuant to 42 U.S.C. § 1983 (Count XI).

The Defendants moved for summary judgment on all counts arguing that Deaton's arrest was justified and that the individual defendants were entitled to qualified immunity. The district court granted summary judgment, entering judgment on false imprisonment in violation of 12 R.I. Gen. Laws § 12-7-1 (1956) (Count II), malicious prosecution (Count III), invasion of privacy (Count V), assault and battery (Count VI), unreasonable search and seizure in violation of the Fourth Amendment (Count IX), conspiracy to violate Plaintiff's constitutional rights (Counts IV and X) and failure to intervene (Count XI), and partially granted summary judgment for failure to supervise (Count VII), and municipal liability (Count VIII) in relation to those counts. The district court remanded to the Rhode Island state court claims for unlawful arrest in violation of 12 R.I. Gen. Laws § 12-7-3 (1956) (Count I) and failure to supervise (Count VII), and municipal liability (Count

_____

[4] In the district court's order denying remand, it determined that Count IV must be based on 42 U.S.C. § 1983 because 9 R.I. Gen. Laws § 9-31-1 (1956) "is Rhode Island's waiver of sovereign immunity and does not create its own cause of action." When Deaton subsequently amended his complaint, adding a specific conspiracy claim, Count X, these two counts were considered "one and the same."

VIII) in relation to Count I.  Deaton filed a motion to reconsider, which was denied.  Deaton now timely appeals both decisions.

## II. Discussion

Deaton argues that summary judgment was not proper because (1) probable cause to arrest Deaton did not exist at the time of his arrest, (2) several facts materially undermined the determination of probable cause, and (3) the district court improperly made credibility determinations and weighed the evidence.  In addition, Deaton argues that (4) denial of Deaton's post-judgment motion was plain error, and (5) the district court should have abstained and remanded to allow full resolution of the state court claims by the state court.  His arguments are unpersuasive.  Therefore, we affirm the district court's judgment.

### A. Summary Judgment

### 1. Standard of Review

We review a district court's determination of a summary judgment motion de novo.  See López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 28 (1st Cir. 2023) (citing Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015)).  We examine the record in "the light most favorable to the nonmovant and draw[] all reasonable inferences in that party's favor."  Id.  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A 'genuine'

issue is one on which the evidence would enable a reasonable jury to find the fact in favor of either party," and "[a] 'material' fact is one that is relevant in the sense that it has the capacity to change the outcome of the jury's determination."  Perez v. Lorraine Enters., Inc., 769 F.3d 23, 29 (1st Cir. 2014) (first citing Vasapolli v. Rostoff, 39 F.3d 27, 32 (1st Cir. 1994); and then citing Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)).  When the material facts, "what the police knew at the moment of the arrest, the source of their knowledge, and the leads that they pursued or eschewed," are undisputed, as they are here, "the existence vel non of probable cause ordinarily is amenable to summary judgment."  Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004).

## 2. Probable Cause[5]

Deaton asks us to find that probable cause did not exist at the time of his arrest and therefore the district court's grant of summary judgment should be vacated.  We disagree.  Because the facts, when viewed in the light most favorable to Deaton, support

---

[5] Rhode Island state courts "accord the federal interpretation [deference] when construing" claims brought under article 1, section 6, the state's equivalent to the Fourth Amendment, including probable cause.  State v. Sinapi, 295 A.3d 787, 806 (R.I. 2023) (alteration in original) (quoting State v. Andujar, 899 A.2d 1209, 1224 n.12 (R.I. 2006)).

- 9 -

a finding of probable cause at the time of his arrest, we affirm the district court.[6]

Counts II, III, IV, VI, VII, VIII, IX, X, and XI hinge on Deaton's claim of lack of probable cause to arrest.[7] Deaton

---

[6] It is disputed when Deaton was actually arrested for purposes of the probable cause analysis. Deaton claims he was arrested the moment he was handcuffed whereas Officer Wyrostek claims the arrest occurred when he told Deaton he was being arrested. The district court addressed this and assumed, without deciding, that the time of arrest was the time Deaton was placed in handcuffs. Deaton takes issue with the district court's assumption of the time of arrest, arguing that this was a dispute of material fact, implying that the assumption improperly altered the probable cause analysis. This argument is irrelevant, however, as the district court chose to use Deaton's version of events, viewing the facts in the light most favorable to Deaton. See López-Hernández, 64 F.4th at 28; Fed. R. Civ. P. 56.

[7] Deaton's 42 U.S.C. § 1983 claims (Counts IV, IX, X, and XI) are all based on his contention of lack of probable cause because in order to succeed, he must prove that he was deprived by one of the officers of a right "secured by the Constitution and laws of the United States." Flagg Bros. v. Brooks, 436 U.S. 149, 156 (1978). Deaton alleges that the Defendants violated his rights by arresting him without probable cause, therefore the 42 U.S.C. § 1983 claims inherently hinge on the determination of probable cause. Counts II and III for false imprisonment and malicious prosecution also rest entirely on probable cause because it is a "necessary element in . . . false imprisonment[] and malicious prosecution claims." Beaudoin v. Levesque, 697 A.2d 1065, 1067 (R.I. 1997) (per curiam). As for Count VI for assault and battery, Deaton did not challenge that the existence of probable cause vitiates the claim, instead arguing that probable cause was a disputed fact, therefore it is included in the analysis. Counts VII and VIII for failure to supervise on the alleged constitutional violation and municipal liability also, at least partially, relate to probable cause because if probable cause is found, there is no constitutional violation, negating these claims. See Acosta, 386 F.3d at 12 (noting the relation of municipal liability to constitutional rights).

- 10 -

was arrested for misdemeanor assault, battery, and disorderly conduct. Assault is "a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm." Broadley v. State, 939 A.2d 1016, 1021 (R.I. 2008) (quoting Hennessey v. Pyne, 694 A.2d 691, 696 (R.I. 1997)). Battery is "an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." Id. at 1021 (quoting Fenwick v. Oberman, 847 A.2d 852, 855 (R.I. 2004)). "A person commits disorderly conduct if he . . . intentionally, knowingly, or recklessly . . . engages in fighting or threatening, or in violent or tumultuous behavior." 11 R.I. Gen. Laws § 11-45-1(a)(1) (1956). Therefore, we must determine whether there was probable cause to arrest Deaton for only one, if not all, of the offenses. See Wilber v. Curtis, 872 F.3d 15, 21 (1st Cir. 2017) (determining probable cause for one of two offenses). As the district court properly concluded, there were undisputed facts to support the conclusion of probable cause to arrest Deaton.

"A warrantless arrest, like the one at issue here, must be based on probable cause." United States v. Fiasconaro, 315 F.3d 28, 34 (1st Cir. 2002). The probable cause determination turns on "whether . . . the facts and circumstances within [the police officer's] knowledge and of which they had reasonably

- 11 -

trustworthy information were sufficient to warrant a prudent [person] in believing that" a crime was committed or was being committed. Beck v. Ohio, 379 U.S. 89, 91 (1964). "Probable cause is a 'fluid concept' and 'not a high bar.'" Karamanoglu v. Town of Yarmouth, 15 F.4th 82, 87 (1st Cir. 2021) (citations omitted). The finding of probable cause does not need to be "ironclad, or even highly probable," as it "need only be reasonable." United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999). "[O]nce police officers are presented with probable cause to support an arrest, no further investigation is required at that point." Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004).

For us to determine if an officer had probable cause, we look to the totality of the circumstances and "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." United States v. Flores, 888 F.3d 537, 543 (1st Cir. 2018) (quoting District of Columbia v. Wesby, 583 U.S. 48, 56-57 (2018)). The existence of probable cause is determined by what the police officer knew "at the time of the arrest." United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005) (citing United States v. Brown, 169 F.3d 89, 91 (1st Cir. 1999)). "[P]robable cause determinations predicated on information furnished by a victim are generally considered to be

reliable," B.C.R. Transp. Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984), and victim statements can therefore be relied on by officers to support the determination of probable cause, Forest, 377 F.3d at 57 (citing id.). Even where there is no admission of tortious conduct by the alleged suspect, the bare accusation by the victim can be enough to support probable cause. See Holder v. Town of Sandown, 585 F.3d 500, 505 (1st Cir. 2009). Therefore, in situations where police rely on a victim's statement, "the primary inquiry . . . is whether there is any evidence that the officers acted unreasonably when they determined that [the victim]'s accusation was credible, in light of all the circumstances known at the time." Forest, 377 F.3d at 57.

It is helpful to establish the relevant, undisputed facts that Officer Wyrostek knew at the time of the arrest in order to proceed with our analysis. At the time of the arrest, it is undisputed that Officer Wyrostek had interacted with Warner and collected his statement that Deaton had assaulted him and put his hands on his throat, had interacted with Deaton and collected his statement that he was assaulted by Warner and denied choking him, did not observe any injuries on Warner, and knew that Deaton was the new partner of Warner's ex-wife. Officer Wyrostek, then, knew that Warner claimed Deaton choked him and that Warner and Deaton had a strained relationship. These facts, standing alone, constitute "reasonably trustworthy information . . . sufficient

to warrant a prudent [officer] in believing that" Deaton assaulted Warner.  Beck, 379 U.S. at 91.

However, Deaton claims that additional facts should be factored into the probable cause analysis and ultimately result in a lack of probable cause, or at least, disputed facts that must go to a jury.  First, Deaton claims that because Warner had an active warrant out for his arrest at the time Deaton was arrested, this should have impacted Warner's credibility.  However, as the district court pointed out, Deaton merely mentioned to Officer Wyrostek that Warner could have a warrant out for his arrest, and Officer Wyrostek did not have actual knowledge of the warrant until after Deaton was placed in handcuffs.  Officer Wyrostek was "not required to credit a suspect's story," Cox v. Hainey, 391 F.3d 25, 32 n.2 (1st Cir. 2004), and therefore did not need to take Deaton's claim of an alleged warrant into consideration when determining probable cause.  Second, Deaton argues Officer Wyrostek knew at the time of the arrest that Deaton told him Warner seemed to be under the influence of illegal substances and had a propensity for violence.  However, Officer Wyrostek was not required to consider these statements as true, as we just explained.  Third, Deaton also argues that because Officer Wyrostek admitted in his deposition that he did not have probable cause before receiving a corroborating statement from a witness, the issue was required to go to the jury.  This argument fails.  "The question of probable

- 14 -

cause, like the question of reasonable suspicion, is an objective inquiry. The 'actual motive or thought process of the officer is not plumbed.'" Holder, 585 F.3d at 504 (quoting Bolton v. Taylor, 367 F.3d 5, 7 (1st Cir. 2004)). Therefore, the district court did not err as a matter of law because Officer Wyrostek could have established probable cause at the time of arrest without the witness statement corroboration.

Thus, the additional facts that Deaton claims Officer Wyrostek knew at the time of his arrest, even if taken as true, do not materially alter the analysis. "On issues where the nonmovant bears the ultimate burden of proof," as here, "he must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986)). Evidence provided that is "merely colorable or is not significantly probative" cannot successfully defeat a motion for summary judgment. Anderson, 477 U.S. at 249-50.

Deaton claims that the following were also known to Officer Wyrostek at the time of his arrest and should have been, and should be, considered.[8] Officer Wyrostek had limited information about Warner as he did not confirm Warner's identifying information, Deaton told Officer Wyrostek that Warner had

_____

[8] Deaton posits said information is contained in Officer Wyrostek's, as well as his own, deposition.

- 15 -

assaulted both Warner's ex-wife and his current partner, Deaton told Officer Wyrostek that Warner was "out of control," Officer Wyrostek confirmed that Deaton had no active warrants for his arrest, Officer Wyrostek had declined to let Deaton take his children home before being handcuffed, Deaton was placed in handcuffs within one to two minutes of speaking with Officer Wyrostek, and Officer Wyrostek was unaware of what his co-worker Officer DeCristoforo was doing.[9]  These facts, even if true, do not require a reversal of the district court's ruling.  "We are not . . . required to 'accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement' made by a party."  Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 123 (1st Cir. 2011) (quoting Torrech–Hernández v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008)).

We now turn to the probable cause analysis pertaining to Warner as the alleged victim in the altercation.  Thus, we must determine if, based on the totality of the circumstances and information known at the time, Officer Wyrostek acted unreasonably

---

[9] Two additional alleged facts Deaton claims Officer Wyrostek knew before he was placed in handcuffs were that Deaton told Officer Wyrostek he was a lawyer and would not jeopardize his practice by choking Warner and that Warner was using Officer Wyrostek as a part of a "scheme to cause problems for Deaton." However, these alleged facts come from Deaton's own deposition testimony where he claimed they were said after he was handcuffed, not before, so they are irrelevant to the probable cause analysis.

after he assumably, for purposes of the probable cause analysis, determined that Warner's account of the incident was credible.

Warner, the alleged victim, gave Officer Wyrostek his account of the incident, after having called 911, claiming to have been in a verbal altercation with Deaton that resulted in Deaton grabbing his throat. Deaton claimed that Warner was the initial aggressor and he was defending himself by pushing Warner away. Warner's "uncorroborated testimony . . . standing alone . . . can support a finding of probable cause" that Deaton committed assault, battery, or disorderly conduct. Acosta, 386 F.3d at 10. Deaton argues that because Officer Wyrostek did not see any injuries on Warner, this fact negated the probable cause determination and lends to the unreasonableness of crediting Warner's account. This argument fails for two reasons: (1) apparent injuries are not required for a battery, and (2) probable cause need only be determined for one of the three charges Deaton was arrested for, which include disorderly conduct and assault, both of which do not require a physical touching.

Deaton also argues that even though the district court acknowledged that Officer Wyrostek knew of the relationship between Deaton and Warner, the district court "completely ignored the fact that [Officer] Wyrostek testified that it was cause to suspect Warner's credibility in this case." However, to support this contention Deaton relies solely on Officer Wyrostek's

- 17 -

deposition testimony given in response to a hypothetical question. The inquiry remains the same: a determination of probable cause is analyzed by facts leading up to and at the time the arrest was made, not by deposition testimony provided afterwards when a civil lawsuit is filed. Regardless, we agree with the district court's statement that although it is true that the nature of Deaton and Warner's relationship could provide cause to suspect Warner's credibility, see Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998), it doesn't render Warner per se uncredible. In addition, we have never held that a past relationship between the parties automatically renders the victim's credibility questionable and have in fact rejected such argument. See Holder, 585 F.3d at 505 (rejecting the argument that because the officer knew of a prior bad relationship, the "witness's credibility must be considered questionable").

The facts in Holder are comparable. Mr. Holder and his estranged wife Ms. Holder got into an altercation at their child's soccer game. Id. at 502. Ms. Holder called the police and told the officer on scene that Mr. Holder had pushed her. Id. Mr. Holder told the officer on scene that Ms. Holder initiated a verbal confrontation and "made contact with him" before he pushed her back. Id. He told the officer that Ms. Holder was his estranged wife who was attempting to get a restraining order and keep him from their child. Id. He further informed the officer that the

two were involved in a tumultuous divorce and child custody battle, urging the officer to speak with other witnesses. Id. at 502-03. The police arrested Mr. Holder for simple assault, the charges were dismissed, Mr. Holder sued for lack of probable cause to arrest, summary judgment was entered in favor of the defendants, and Mr. Holder appealed. Id. at 503. We held that even without an admission by Mr. Holder that he had pushed Ms. Holder, Ms. Holder's claim that she was pushed was enough because "information furnished by a victim is generally considered sufficiently reliable to support a finding of probable cause." Id. at 505 (quotation marks omitted) (quoting Acosta, 386 F.3d at 10). Therefore, in this case, Officer Wyrostek could have concluded that probable cause to arrest Deaton existed based solely on Warner's claims about Deaton.

In addition, we have held that a police officer is not required to further "investigate potential defenses or resolve conflicting accounts prior to making an arrest." See id. (citing Acosta, 386 F.3d at 11). "[W]e have made it clear that an officer normally may terminate her [or his] investigation when she [or he] accumulates facts that demonstrate sufficient probable cause." Acosta, 386 F.3d at 11. Deaton implies that because Officer Wyrostek did not interview other witnesses to the altercation, he could not have made a proper probable cause determination. But because Officer Wyrostek could have found probable cause by

weighing of Deaton's and Warner's accounts, he was not required to investigate further. Therefore, the witnesses' statements were not required.

Similarly, Deaton attempts to argue that because he and Warner had conflicting accounts, there could not have been probable cause to arrest him. He supports this claim with Officer Wyrostek's deposition, which he alleges the district court ignored. However, "[a] reasonable police officer is not required to credit a suspect's story." Cox, 391 F.3d at 32 n.2. Police officers "do not have an unflagging duty to complete a full investigation before making a probable cause determination," even when presented with conflicting accounts. Charron v. Cnty. of York, 49 F.4th 608, 616 (1st Cir. 2022) (internal quotation marks and citation omitted); see also Acosta, 386 F.3d at 11 (explaining that police do not have an obligation to investigate defenses before finding probable cause). An "officer [is] not obligated to make a definitive credibility judgment about the relative accuracy of the accounts of the protagonists." Holder, 585 F.3d at 506. Therefore, Deaton's arguments as to conflicting accounts, the past relationship, lack of apparent injuries, and lack of witness statements fails to materially alter the probable cause analysis. See id. at 506 ("The fact that Mr. Holder and Ms. Holder were not on good terms and had given somewhat differing accounts of the encounter did not render unreasonable Officer Morrow's conclusion

that it was fairly probable that Mr. Holder had committed a simple assault.").

Deaton lastly claims that "[t]he [district] court held that [Officer] Wyrostek's credibility determination was not unreasonable yet also stated that a reasonable officer could decide Warner was more credible than Deaton." Deaton argues that the district court was contradicting itself and making its own credibility determinations at the summary judgment stage. This is incorrect. The district court was analyzing what Officer Wyrostek's credibility assessment could have been and his permissible probable cause determination. The district court was analyzing whether Officer Wyrostek had enough facts known to him at the time of arrest to support a credibility analysis of Warner, Deaton, and the probable cause determination. Accordingly, the district court did not engage in a credibility determination.

In conclusion, Officer Wyrostek had sufficient information to make a probable cause determination and arrest Deaton. "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Maryland v. Pringle, 540 U.S. 366, 370-71 (2003) (alteration in original) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Police officers are permitted to "draw reasonable inferences from [the] facts in light of their knowledge of the area and their prior

experience." Estrada v. Rhode Island, 594 F.3d 56, 65 (1st Cir. 2010) (alteration in original) (quoting United States v. Ortiz, 422 U.S. 891, 897 (1975)). Thus, based on these facts and Officer Wyrostek's experience and evaluation of the situation, it was reasonable for Officer Wyrostek to have concluded probable cause existed.

## B. Post-Judgment Motion

Deaton asks us to conclude that the district court's denial of his post-judgment motion for relief was plain error. "The hurdle [to succeed] is a high one." Latin Am. Music Co. v. Am. Soc'y of Composers, Authors, & Publishers, 642 F.3d 87, 91 (1st Cir. 2011); see also Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002) (explaining that "relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly"). "To obtain relief, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citing Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)); see also Karak, 288 F.3d at 19 (noting "a party who seeks recourse under Rule 60(b) must persuade the trial court, at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff

to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted"). "[W]e will not overturn the district court's denial of a motion for reconsideration absent an abuse of discretion." Palmer, 465 F.3d at 30 (first citing Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006); and then citing In re Sun Pipe Line Co., 831 F.2d 22, 25 (1st Cir. 1987)).

Deaton claims that the district court found probable cause on a clear mistake of fact. In other words, because Officer Wyrostek testified in his deposition that he did not have probable cause to arrest Deaton until he had the coach's witness statement corroborating Warner's account, then it was impossible for Officer Wyrostek to make a credibility determination that Warner's account was more credible than Deaton's at the time of arrest. This claim was already made in the opposition to the motion for summary judgment and was properly considered by the district court, as we explained, therefore there was no error. "[A] motion to alter or amend is not 'a mechanism to regurgitate old arguments previously considered and rejected.'" Ing v. Tufts Univ., 81 F.4th 77, 85-86 (1st Cir. 2023) (quoting Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014)).

In addition, Deaton argues that because the district court found that "there are genuine issues of material fact as to whether Officer Wyrostek was plainly incompetent," as to 12 R.I.

Gen. Laws § 12-7-3 (1956) in relation to Count I, then it must be true that a jury could find him incompetent to determine credibility for probable cause. This is misguided. The probable cause analysis was properly decided by the district court because there were no disputed material facts. Because there were no disputed material facts, the district court was permitted to analyze and conclude as a matter of law whether Officer Wyrostek could have concluded there was probable cause. Therefore, Deaton did not meet the high hurdle to succeed on his post-judgment motion for relief claim.

## C. Remanded State Court Claims

Lastly, Deaton asks us to reverse the district court's entry of summary judgment and order it to abstain from hearing any federal claims. Deaton argues that the constitutional claims in this case rest on unsettled questions of state law under 12 R.I. Gen. Laws § 12-7-3 (1956), therefore, according to Railroad Commission of Texas v. Pullman, 312 U.S. 496 (1941), the state-law claims should be settled first. This argument was made for the first time in his post-judgment motion for relief. Deaton's failure to request abstention before judgment counsels against upsetting the district court's decision. See First Fed. Sav. & Loan Ass'n of Bos. v. Greenwald, 591 F.2d 417, 424 (1st Cir. 1979) (explaining that failure to raise an abstention argument below creates a "poor position, equitably, to seek abstention"). Because

parties can come "close to waiving, if they [do] not actually waive, any claim that the district court should abstain" when they seek to "send [an] already-decided case to another tribunal," we may "take into account the proponent's failure to bring the issue to the lower court's attention where the argument is not clearly suggested by the circumstances." Id. at 425, 425 n.9. Regardless, abstention is inappropriate here.

A party seeking Pullman abstention has the burden of showing that the resolution of "settling [an uncertain] question of state law [raised by the suit] will or may well obviate the need to resolve a significant federal constitutional question." Casiano-Montanez v. State Ins. Fund Corp., 707 F.3d 124, 128 (1st Cir. 2013) (citation omitted). However, questions about 12 R.I. Gen. Laws § 12-7-3 (1956) have no bearing on Count IV, which is rooted only in the federal constitution and therefore necessarily requires a court to reach the federal probable-cause issue. Thus, we will not abstain from hearing Deaton's claims because resolution of the 12 R.I. Gen. Laws § 12-7-3 (1956) question would not "avoid[] unnecessary decision of constitutional issues." 17A

- 25 -

Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 4242 (3d ed. 2023).

### III. Conclusion

For the reasons stated, the district court's orders granting summary judgment and denying post-judgment relief are

**<u>Affirmed</u>**.